In re WAR EAGLE FLOATS, INC., Debtor.

WAR EAGLE FLOATS, INC., Plaintiff,

v.

Charles TRAVIS, Defendant.

Bankruptcy No. 88-70931.

Adv. No. 89-7005.

United States Bankruptcy Court, E.D. Oklahoma.

Sept. 14, 1989.

Ron Wright, Muskogee, Okl., for plaintiff.

Elton L. Johnson, Jr., Tahlequah, Okl., for defendant.

## ORDER

JAMES E. RYAN, Bankruptcy Judge.

On this 14th day of September, 1989, the above referenced adversary proceeding came before this Court for resolution. At the Pre-Trial Conference conducted on June 23, 1989, Ron Wright on behalf of the Plaintiff and Elton Johnson on behalf of the Defendant agreed that this adversary could be resolved by this Court on the submission of Joint Stipulations of Fact and briefs outlining the parties' respective legal positions. As a result, the Stipulation of Facts and Issue of Law between War Eagle Floats, Inc. and Charles Travis (Docket Entry # 15) with Supplemental Stipulation (Docket Entry # 18), Memorandum of Authority of War Eagle Floats, Inc. (Docket Entry # 17), Defendant's Trial Brief Upon Stipulation of Facts (Docket Entry # 16) and Reply Brief of War Eagle Floats, Inc. (Docket Entry # 19) were timely received for this Court to utilize in its decision.

After review of the above set forth pleadings and the applicable law in the area, this Court does hereby enter into the following Findings of Fact and Conclusions of Law in this core proceeding:

## STATEMENT OF ISSUE

As stipulated by the parties, the issue of law to be resolved by this Court is whether the tax resale of the subject property conducted by the County Treasurer of Cherokee County, Oklahoma,

pursuant to Oklahoma law and the conveyance by County Treasurer's Resale Deed to Charles Travis on the 13th day of June, 1988, is avoidable by the Debtor-in-Possession under 11 U.S.C. § 548(a)(2).

## FINDINGS OF FACT

1. War Eagle Floats, Inc. is an Oklahoma corporation which filed a voluntary Petition for relief under Chapter 11 of the U.S. Bankruptcy Code on August 10, 1988.

2. War Eagle Floats, Inc. was the owner in 1983 of a tract of real property located in Cherokee County, Oklahoma, described as follows:

> Beginning 608.5′ W of NE Corner of NW4 of SW4 of NE4 W 1371.5′ S 660′ E 660′ S 462.7′, said point being 198.5′ N of SW Corner of E2 of SE4 of NW4 E 277.8′ N 30.6′ on curve to the right 156.1′ N 43° 02′ W 159.1′ N 57° 58′ E 1038.1′ to a point being SW Corner Lot 6, Block 2, Westside Addition, S 89° 47′ W 98.4′ S 62° 57′ W 338.6′ N 0° 6′ W 440.8′ to a point of beginning, less pts. located in Section 32, Township 17 North, Range 22 East. ·

3. On October 7, 1985, the County Treasurer of Cherokee County held a delinquent tax sale at which the described property was sold to Cherokee County for $266.09 for the 1984 Ad Valorem Taxes in the absence of bidders therefor.

4. The above described property remained unredeemed for the years 1985, 1986 and 1987.

5. Beginning on May 6, 1988, the Cherokee County Treasurer gave notice of a tax resale to be held June 13, 1988, covering, among other properties, the subject tract.

6. Notice of the proposed sale was given to War Eagle Floats, Inc. by Certified Mail, and to First National Bank of Cushing and the Oklahoma Tax Commission. Said Notice of the tax resale was posted and published.

7. On June 13, 1988, the subject property was sold at resale by the Treasurer of Cherokee County to Charles Travis for $1,765.00.

8. On June 13, 1988, the value of the subject property exceeded $1,765.00 and continues to exceed that amount.

9. The price paid at the tax resale, $1,765.00, reflects an amount which is less than fifty percent of the fair market value of the property sold at tax resale.

10. On June 13, 1988, a County Treasurer's Resale Deed was executed by the Cherokee County Treasurer to Charles Travis, filed in the office of the County Clerk of Cherokee County in Book 425 at Page 351 which was corrected by a Corrected Deed filed in Book 425 at Page 720.

11. On November 2, 1988, the Cherokee County Treasurer gave notice of excess funds held by the Cherokee County Treasurer to War Eagle Floats, Inc.

12. The Plaintiff states in its Memorandum of Authority that "under 11 U.S.C. § 547(f) for purposes of preferential determination, War Eagle is presumed to have been insolvent for ninety days prior to August 10, 1988, which includes the date of the tax resale. War Eagle's Schedules and Statement of Affairs which are part of the record in these bankruptcy proceedings bear out the presumption of insolvency." The Defendant disputes this contention.

## CONCLUSIONS OF LAW

A. Plaintiff encourages this Court to avoid the transfer of the subject property to the Defendant by Tax Resale Deed by applying the elements of 11 U.S.C. § 548(a)(2)(A) and (a)(2)(B)(i) which states:

> (a) The trustee (Debtor-in-Possession) may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> (2)(A) received less than a reasonable equivalent value in exchange for such transfer or obligation; and
>
> (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

(parenthetical information added by Court)

Thus, the two essential elements which must be proven by the Plaintiff in this case are one: insolvency of the Debtor at the time of the transfer, and two: the Debtor did not receive reasonably equivalent value as a result of the transfer for the property at issue.

An action for a fraudulent transfer has long been considered as one founded in equity. *Damsky v. Zavatt*, 289 F.2d 46 (2nd Cir.1961). But see *Granfinanciera, S.A. v. Nordberg, Creditor Trustee for the Estate of Chase & Sanborn Corp.,* —— U.S. ——, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

■ B. The Plaintiff suggests that insolvency is presumed in an action under § 548(a)(2) due to the language contained in § 547 regarding preferential transfers. At subsection (f), that section states:

*For the purposes of this section,* the debtor is presumed to have been insolvent on and during the ninety days immediately preceding the date of the filing of the petition. (emphasis added)

We agree that should this section apply, the time of the transfer would necessarily fall within this time period. However, this subsection clearly is restricted to application to § 547 and has absolutely no bearing or applicability in an action brought under § 548. Thus, there is no presumption as suggested by the Plaintiff in a fraudulent transfer complaint.

■ The insolvency standard most often relied upon by Courts in an action brought pursuant to 11 U.S.C. § 548(a)(2) is that which is contained within the Bankruptcy Code at 11 U.S.C. § 101(31) which states:

'Insolvent' means—

(A) with reference to an entity other than a partnership, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—

(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and

(ii) property that may be exempted from property of the estate under § 522 of this title.

See *In re Porter,* 37 B.R. 56, 61 (Bankr.E.D.Va.1984) and *In re Storage Technology Corporation,* 48 B.R. 862, 866 (Bankr.D.Colo.1985). This term "insolvency" used throughout the Code refers to the balance sheet insolvency (i.e., assets vs. liabilities) as opposed to other tests for insolvency found elsewhere in the law (e.g., the Uniform Commercial Code).

The Debtor also refers this Court in a circuitous manner to take notice of the Schedules filed in the case on August 10, 1988. Those Schedules contain a Balance Sheet reflecting the Debtor corporation. financial position on December 31, 1987, showing total assets of $502,300 and total liabilities of $774,408. Since the sale took place on June 13, 1988, the information provided in the Schedules is insufficiently contemporaneous with the time of the transfer to demonstrate with any accuracy the insolvency of the corporation. To decide otherwise would not recognize the practicality of the business world and the cyclical nature of the business in which the Debtor was engaged. Six months is simply too long a period considering the strict requirements of § 548(a)(2) specifically necessitating evidence of insolvency on the date of the transfer at issue. That evidence is wholly lacking in the pleadings before this Court. Thus, the Plaintiff fails on the first element of the applicable section.

■ C. In addition, this Court does not find persuasive the case of *Durrett v. Washington National Insurance Co.,* 621 F.2d 201 (5th Cir.1980) cited by the Plaintiff. In that case, the Court set aside a non-collusive foreclosure sale due to the debtor not receiving the reasonably equivalent value which that Court established at seventy percent of the appraised market value of the property. That case has frequently been criticized due to its rigid stand in the practical world of foreclosure suits. See e.g., *In re Winshall Settlor's Trust,* 758 F.2d 1136, 1138 (6th Cir.1985); *In re Alsop,* 14 B.R. 982, 987 (Bankr.D.

Alaska 1981); *In re Madrid*, 725 F.2d 1197 (9th Cir.1984); *In re Gilmore*, 31 B.R. 615 (Bankr.E.D.Wash.1983); *In re Ruebeck*, 13 Bankr.Ct.Dec. 1106, 55 B.R. 163 (Bankr.D. Mass.1985). The language of the 6th Circuit notes that "the well nigh universal rule that mere inadequacy of price alone does not justify setting aside an execution sale and that generally there must be in addition proof of some element of fraud, unfairness, or oppression accounting for the inadequacy in price, (the 9th Circuit) concluded that following the *Durrett* holding would radically alter these rules." (parenthetical information added by Court) Further, "the cloud created over mortgages and trust deeds by making foreclosure sales subject to being voided by a bankruptcy trustee will naturally inhibit a purchaser other than the mortgagee from buying at foreclosure. This tends to depress further the prices of foreclosure sales and thus increase the potential size of the deficiency in each foreclosure." *In re Winshall*, supra at p. 1139.

We find that the same problem would arise in tax resales such as is at issue in the instant case. To decide otherwise would, in a practical sense, chill all potential bidding on property claimed in satisfaction of a tax lien. A depressed sale price is simply the inherent result of a tax or foreclosure sale. Thus, a "reasonably equivalent value" may never be realized. If such sales could be set aside due to the payment of these depressed prices in a bankruptcy scenario, the market for these properties would be nonexistent.

IT IS THEREFORE ORDERED that Judgment be entered in favor of the Defendant for the reasons set forth herein above. The Clerk is directed to close this case.