**In re John Ervin HALL, Jr., Debtor.**

**John Ervin HALL, Jr., Plaintiff,**

**v.**

**Edward E. QUIGLEY, Jr. and Clarence L. Quigley, Defendants.**

**Bankruptcy No. 91–04018.
Adv. No. 91–8010.**

United States Bankruptcy Court,
N.D. Florida,
Pensacola Division.

Aug. 15, 1991.

**214**

Lancey F. Langston, Pensacola, Fla., for plaintiff.

J. Steven Ford, Pensacola, Fla., for defendants.

## MEMORANDUM OPINION

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

This matter is before the Court on the defendants', Edward and Clarence Quigley, motion to dismiss the plaintiff John Hall's adversary complaint. Hall, the chapter 11 debtor, filed a three count complaint seeking to avoid an alleged fraudulent transfer to the defendants. The defendants filed a motion to dismiss the case for failure to state a claim upon which relief may be granted. Having considered the argument of counsel, the filed memoranda of law, and for the reasons set forth below, we find that the defendants' motion shall be granted.

## FACTS

La Buena Vida, Inc. was a Florida corporation that was involuntarily dissolved in November, 1989, for failure to file with the State of Florida its annual report and pay its annual fee. At the time of dissolution, Hall was the President and sole director of the corporation and the 100% shareholder. As the director of the corporation at the time of dissolution, Hall became the designated trustee of the property owned by the corporation pursuant to § 607.301(1), Fla. Stat. The only significant asset of the corporation at the time of dissolution was a 16 acre tract of land.

Prior to the dissolution, the corporation failed to pay its *ad valorem* taxes on the 16 acres of land and a tax certificate was sold to Barbara Ruben pursuant to § 197.-432, Fla.Stat. On September 27, 1990, Ms. Ruben applied for a tax deed on the 16 acres. On December 2, 1990, pursuant to Florida Statute § 197.542, the property was sold at public sale and the defendants were the highest bidders for the sum of $13,500.

Thereafter, on January 9, 1991, the debtor filed for protection under Chapter 11, Title 11 of the United States Code. His schedules list assets, consisting primarily of real estate, of $5,325,054.02 and liabilities of $930,779.47, most of which is secured by his real estate. Subsequent to filing the petition, the debtor brought this adversary proceeding against the defendants seeking to avoid the sale of the tax deed. The complaint alleges that, within one year of the date of filing, the defendants received a transfer of the property, in which the debtor had an interest, for less than its reasonably equivalent value. The complaint further alleges that the debtor did not have the ability to pay debts he would incur after the transfer.

The three separate counts all seek to avoid the transfer pursuant to 11 U.S.C. § 548(a)(2)(B)(iii). However, they do not state three different causes of action, but allege three separate theories to establish his interest in the property, which was titled in the corporate name. He asserts that (1) as trustee of the dissolved corporation he has a beneficial interest in the property, (2) he is the alter ego of the dissolved corporation and, as such, owns an interest in the property, and (3) he was a purchaser of the property pursuant to a contract for deed. At hearing, the debtor admitted he was unable to produce any evidence of a contract for deed. Therefore, Count III, asserting an interest pursuant to the con-

tract, is dismissed with the consent of the debtor.

## STANDARD OF REVIEW

"A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." *Milburn v. United States*, 734 F.2d 762 (11th Cir.1984), *citing, Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

## ALTER–EGO

 In Count II the debtor asserts that he did not treat the corporation as a separate entity apart from himself. Therefore, he alleges, he is the alter ego of the corporation. As such, he asserts he should be treated as identical to the corporation and recognized as the owner of the property.

Generally, the alter ego theory is a sword used by creditors to pierce a corporate veil to reach shareholders. The debtor has presented no authority to show that a shareholder can use the alter ego theory in order to assert that his interests and the corporation's interests are identical. There is, however, authority holding that a corporation cannot use the alter ego theory to pierce its own veil. *In re Ozark Restaurant Equipment Co.*, 816 F.2d 1222 (8th Cir.1987), *cert. denied*, 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987). Likewise, we hold that, absent very limited circumstances, none of which have been presented here, a shareholder cannot use the alter ego theory to pierce the corporate veil so as to make him, individually, the owner of the corporate assets. Therefore, Count II shall be dismissed for failure to state a claim upon which relief my be granted.

## BENEFICIARY OF TRUST

 The debtor's remaining count, Count I, asserts that under state law, as a beneficiary of the statutory trust created by the involuntary dissolution of the corpo-

ration, the debtor has an interest in the corporation's property, particularly the property subject to this action. The defendants contend that the debtor merely owned a beneficial interest in whatever assets remained after payment of all corporate obligations of La Buena Vida, Inc.

Florida Statute § 607.301[1] appoints the directors of a corporation at the time of its dissolution as trustees of any property owned or acquired by the dissolved corporation. The trustees have the obligation to collect the corporate assets and pay or discharge its debts, obligations, or liabilities. Any remaining property shall be distributed to its shareholders. As the 100% shareholder of La Buena Vida, the debtor would receive any property that remained after the corporation was finally wrapped up. Therefore, it is recognized that he holds a beneficial interest in the distribution of any remaining assets of La Buena Vida, Inc. *See, Trueman Fertilizer Co. v. Allison*, 81 So.2d 734 (Fla.1955) (Recognizing that when a corporation was dissolved for non-payment of capital stock tax, the beneficial title to the corporation assets was vested in the stockholders with legal title in the directors as trustees).

Bankruptcy Code § 548 gives the trustee (debtor-in-possession) the authority to avoid the transfer of an interest of the debtor in property. Included in the definition of "property of the estate" in § 541 of the code are all "equitable interests of the debtor in property." Clearly, as a beneficiary of the statutory trust, the debtor had an equitable interest in the property subject to this action. As such, he may maintain any action to recover that property allowable § 548.

## FRAUDULENT TRANSFER

 We now turn to the issue of whether the debtor has stated a cause of action to recover the property under Code § 548(a)(2)(B)(iii). That section provides:

---

1. Fla.Stat. 607.301 was repealed by § 607.1405 effective July 1, 1990. However, the new statute has no effective bearing on this case since the corporation had already been dissolved at the time of the enactment.

(a) The trustee may avoid any transfer of an interest of the debtor in property, or an obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548. To avoid the transfer the debtor must show that (1) he had an interest in the property, (2) the property was transferred within one year prior to the filing of the bankruptcy, (3) that the property was transferred for less than its reasonably equivalent value, and (4) that at the time of the transfer he intended to incur or believed he would incur debts beyond his ability to pay such debts as they matured. We have already found that the debtor had an interest in the property at the time of the transfer. Further, there is no dispute that the transfer occurred less than one year prior to the bankruptcy. The remaining issues are whether the property was transferred for less than a reasonably equivalent value and at a time when the debtor intended to or believed he would incur additional debt that he could not pay.

## A. REASONABLY EQUIVALENT VALUE

There are differing lines of cases defining what is "reasonably equivalent value." One line, following *Durrett v. Washington Nat'l Ins. Co.*, 621 F.2d 201 (5th Cir.1980)[2], holds that a bid for less than 70% of the fair market value of the property failed to constitute fair consideration. Another line, following *Madrid v. Lawyers Title Ins. Corp.*, 725 F.2d 1197 (9th Cir.1984), limits *Durrett* to private sales and holds that the winning bid at a regularly conducted, non-collusive mortgage foreclosure sale constitutes reasonably equivalent value. The final line of cases, following *First Federal*

*Savings and Loan Ass'n of Bismark v. Hulm*, 738 F.2d 323 (8th Cir.), *cert. denied*, 469 U.S. 990, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984), holds that courts must determine reasonably equivalent value on a case by case basis. *See* 4 Collier on Bankruptcy ¶ 548.09, at 548–113 n. 17a (15th ed. 1991).

In this case, the tax deed was sold for $13,500, the assessed tax value of the property was $138,020, and the debtor claims the property was worth approximately $550,000. However, since the defendants have not contested that the property was sold for less than a reasonably equivalent value, we need not delve into the issue of whether the transfer of property by tax deed sale is excepted from the *Durrett* standard. For purposes of this motion we shall consider the property to have been transferred for less than reasonably equivalent value.

## B. SECTION 548(a)(2)(B)(iii)

The next issue is whether, under the facts as alleged, at the time of the transfer the debtor intended to incur, or believed he would incur, debts that would be beyond his ability to pay. The debtor claims that his inability to pay debts he incurred as they matured is demonstrated by the fact that he has been continually, and will continue to be, unable to pay *ad valorem* taxes on most of his real property. He further claims that he continues to be unable to make payments on mortgages and promissory notes as they become due. However, the mortgages and promissory notes are not debts that he intended to incur after the transfer. They were debts that he had already incurred. Therefore, the only debts that the debtor could assert that he believed he would incur are the *ad valorem* taxes.

Provision (B)(iii) requires that the debtor incur debt that he would be unable to pay as it became due. The debtor has stated that he intends to incur further *ad valorem* taxes that he will not be able to pay. This provision clearly contemplates the debtor

---

**2.** The decisions of the Fifth Circuit existing on September 30, 1981 are binding precedent on courts in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981).

incurring new debt after the transfer. It should not apply when the only future debts are those which will accrue due to the debtor's ownership of real property.

■ Further, the debtor's schedules list assets of $5,325,054.02 and liabilities of $930,779.47. He is far from insolvent, but he claims to be cash poor and unable to pay debts as they mature. Provision (B)(iii) does not require that the debtor be insolvent to maintain a fraudulent transfer action. If the transfer causes the debtor to be unable to meet all his debts at some point in the future it may be avoided pursuant to (B)(i) or (ii). In this case, the debtor has at all relevant times been solvent. However, the mere fact that he is cash poor does not mean he cannot pay debts as they mature. He has over $4,000,000 in surplus assets which may be liquidated to meet all future debts as they mature. More importantly, though, the only debts claimed to have been incurred after the sale were secured by liens on property of sufficient value to satisfy such liens. Thus, the tax sale had absolutely no effect on the debtor's ability to pay those obligations.

■ A more fundamental issue is whether § 548(a)(2)(B)(iii) applies at all in cases where the transfer is involuntary, especially when the debtor is admittedly solvent. There is scant authority referring specifically to § 548(a)(2)(B)(iii). All cases that do discuss the provision examine the intent of the debtor when the transfer was made. There is no authority that has addressed the issues that arise from a transfer made involuntarily.

All three subparagraphs of subsection (B) were initially structured to avoid transfers made by a debtor to third parties in an attempt to hide assets from creditors. In *Durrett, supra,* the transferee attempted to make this same point and argued that a transfer made pursuant to a power of sale provision of a deed of trust was not a transfer contemplated by § 67(d) of the Bankruptcy Act, the predecessor to § 548. However, the court examined the definition of "transfer" and found that such transfer was within the purview of § 67(d). In

1984, Congress added the word "involuntarily" to the section. The legislative history indicates that this was not done for the purpose of codifying *Durrett,* but to clarify that voluntary and involuntary transfers may be avoided. *See* Norton Bankruptcy Law and Practice, p. 507 (1990), *citing,* (130 Cong.Rec. § 13771, 13772 (daily ed. Oct. 5, 1984); remarks of Sen. DeConcini and Sen. Dole).

The inclusion of the word "involuntarily" does not alter the effect of sub-subsections (B)(i) and (ii). In those instances, a transfer will be avoided where the debtor was insolvent or such transfer renders the debtor insolvent or in such financial condition that it will be unable to continue to operate. These provisions continue to protect all creditors from the diminution of the debtor's property.

However, applying subsection (B)(iii) to involuntary transfers results in an internal conflict within § 548. That provision requires an affirmative act by the debtor, that is the decision to incur future debt. An involuntary transfer, however, results from an action taken by a creditor of which the debtor has no control. If (B)(iii) were to apply to involuntary transfers, an involuntary transfer could not be avoided unless the debtor intended to incur further debt *after* the transfer is made. This interpretation would allow a debtor, whose assets have been legitimately transferred through judicial process to a creditor, to set out, for the sole purpose of avoiding the transfer through the bankruptcy process, to incur such future debts that he could not repay. If, as the plaintiff claims in this case, accruing mortgage and tax debt on real property qualifies as future debt under (B)(iii), then the debtor could simply stop making those payments in order to set up a fraudulent conveyance action. The purpose of this provision is to protect would be creditors from debtors who attempt to hide their assets prior to incurring the debt. It is not designed as a device to avoid legitimate, noncollusive, judicial or statutorily authorized sales of property.

**218**

Sub-subsection (B)(iii) is adapted from § 6 of the Uniform Fraudulent Conveyance Act, which provides:

> Every conveyance made and every obligation incurred without fair consideration when the *person making the conveyance or entering into the obligation* intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors. (emphasis added)

UFCA § 6. Further, § 4(a)(2)(ii) of the Uniform Fraudulent Transfer Act adopts similar language of § 548(a)(2)(B)(iii):

> (a) a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before of after the transfer was made or the obligation was incurred, if the *debtor made the transfer or incurred the obligation:*
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor
>
> (ii) intended to incur, or believed or reasonably should have believed that he [or she] would incur, debts beyond his [or her] ability to pay as they became due. (emphasis added)

UFTA § 4. *See generally* 4 Collier on Bankruptcy ¶ 548.05 (15th ed. 1991). These two sections of their respective uniform acts clearly contemplate the debtor voluntarily making a transfer when he knows that he will be unable to pay future debts as they mature. They do not contemplate an involuntary transfer of the debtor's property. Likewise, it appears involuntary transfers were not contemplated in § 548(a)(2)(B)(iii). Instead, the provision remains to protect future creditors from a debtor who transfers assets with the intent to hide the assets and impair his ability to pay debts as they mature.

Based on the forgoing, we conclude that the complaint does not demonstrate that the transfer of the tax deed occurred at a time that the debtor "intended to incur or believed that he would incur, debts that would be beyond the debtor's ability to pay as such debts matured." Further, we hold that as a matter of law, § 548(a)(2)(B)(iii) does not apply where the debtor is solvent

and the transfer is involuntary, resulting from a non-collusive tax sale of the property. Accordingly, the defendants' motion shall be granted and the complaint dismissed.

A separate order will be entered in accordance herewith.

DONE AND ORDERED.