**In re SLACK–HORNER FOUNDRIES COMPANY, Debtor.**

**Jeffrey A. WEINMAN, Trustee, Appellant,**

v.

**George L. SIMONS, Appellee.**

**No. 91–1072.**

United States Court of Appeals, Tenth Circuit.

July 28, 1992.

Caroline C. Fuller, of Fairfield and Woods, P.C., Denver, Colo., for appellant.

Robert W. Caddes, Denver, Colo., for appellee.

Before SEYMOUR and BARRETT, Circuit Judges, and BROWN, District Judge.*

WESLEY E. BROWN, District Judge.

This appeal arises out of a bankruptcy case. Appellant Jeffrey Weinman challenges the district court's ruling that Weinman, the trustee of the debtor's estate, could not set aside a certain transfer of real property as a fraudulent transfer under 11 U.S.C. § 548. The transaction in dispute occurred after the debtor failed to pay property taxes on a piece of real estate it owned in Boulder County, Colorado. The unpaid taxes became a lien upon the property in favor of the state of Colorado. The lien was subsequently sold at a public sale to appellee George Simons, who paid the taxes due on the property for the next several years. When the debtor failed to redeem the property within three years, Simons obtained a treasurer's deed to the property from Boulder County. The deed had the effect of vesting all title and interest in the property in Simons. Within one year following the issuance of Simons' treasurer's deed, the debtor filed for bankruptcy. The trustee brought this action, alleging that the transfer of the property to Simons was voidable as a fraudulent transfer under 11 U.S.C. § 548(a)(2)(A)–(B)(i). Both the bankruptcy court and the district court found that the trustee could not void the transaction.

The facts of the case are largely undisputed. The bankruptcy court found them to be as follows:

1. Prior to December 1, 1983, the debtor was the owner of a certain parcel of real property, ("the property") described as:

Lot 1 of the West ¼ of Lot 2, Block 2, Conner Subdivision being a resubdivision of a part of the Factory Place Addition to the City of Longmont, Boulder County, Colorado, according to the recorded plat thereof.

2. On December 1, 1983, the Boulder County Treasurer conducted a tax sale of the property for the nonpayment of real property taxes for the year 1982. Simons was the successful bidder for the property at that tax sale with a bid of $8,638.34 and received a Tax Sale Certificate of Purchase.

3. Simons also paid the delinquent real property taxes for the years 1982 through 1987 and has paid a total of $66,134.61 in unpaid property taxes to obtain title to the property.

4. Simons obtained a treasurer's deed on December 10, 1987 which was recorded on December 11, 1987. The property was conveyed to Simons by virtue of the treasurer's deed issued on December 10, 1987.

5. The defendant thereafter sold the property to Stellar Industries, Inc., on May 13, 1988, for $170,000.00. He received a down payment of $40,000.00 and a Deed of Trust for his benefit in the amount of $130,000.00 to secure the repayment of the balance. Stellar Industries defaulted and Simons instituted foreclosure proceedings and obtained a Public Trustee's Deed to the property on March 31, 1989.

6. On April 26, 1989, Simons and Stellar Industries entered into a Rental Agreement whereby Simons leased the property to Stellar on a month-to-month basis at a rental of $2,500.00 per month.

7. Simons has collected rents in the total sum of $40,000.00, $10,000.00 of which is being held in escrow pursuant to an order of the bankruptcy court.

---

* The Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation.

8. The debtor filed its voluntary petition under Chapter 11 on September 23, 1988. The case was converted to Chapter 7 on October 17, 1989, and the plaintiff was thereafter appointed as the Chapter 7 trustee. The case was reconverted, at plaintiff's request, to a Chapter 11 by order of this [the bankruptcy] court entered December 26, 1989.

9. The trustee seeks to avoid the transfer of the debtor's interest in the property under 11 U.S.C. § 548(a)(2).

10. The parties have stipulated that the debtor was insolvent on December 10 and 11, 1987, when the treasurer's deed was issued and recorded. The property which Simons obtained by treasurer's deed is one of three parcels of real property upon which the debtor's foundry sits. The other two parcels are owned by the Small Business Administration.

11. The trustee seeks the return of the property and the turnover of $70,000.00 from the defendant and the $10,000.00 held in escrow.

The trustee seeks to avoid the transfer of the property under 11 U.S.C. § 548(a)(2)–(B)(i), which provides:

### § 548. Fraudulent Transfers and Obligations.

(a) The trustee may avoid any transfer of an interest of the debtor in property ... that was made ... on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(2)(A) Received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made....

Section 101(54) of the Bankruptcy Code defines a "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption."

The appellant trustee contends that the facts of this case fall squarely within § 548. Appellant argues that issuance of the treasurer's deed to Simons was a transfer of an interest of the debtor in property within the meaning of § 548. Appellant also contends that the debtor received less than reasonably equivalent value for the property because Simons paid a total of only $66,134.61 to obtain the property even though it had a market value (according to the trustee) of $170,000.

The bankruptcy court held that the trustee could not set aside the transaction. Applying § 548(d)(1), the bankruptcy court determined that the transfer occurred when Simons recorded the treasurer's deed on December 11, 1987, because the recording of the deed meant that no bona fide purchaser from the debtor could obtain an interest in the property superior to Simons'. The court went on to find, however, that the debtor's interest in the property had been terminated the day before, on December 10, 1987, when the treasurer's deed was issued. Thus, the court concluded, at the time of the transfer the debtor had no interest in the property and there could be no "transfer of an interest of the debtor in property" under § 548(a). The trustee appealed the ruling to the U.S. District Court, which affirmed the bankruptcy court's decision.

Appellant contends that the lower court's reasoning was faulty. Appellant points out that in any transfer of property by deed, the deed is executed before it is recorded. Thus, the grantor-debtor never has an interest in the subject property at the time a deed is recorded. Under the lower court's reasoning, no transfer by deed could be considered a transfer of an interest of the debtor in property. According to appellant, the avoidance power of § 548 would be meaningless if applied in the manner advocated by the bankruptcy and district court. Appellant maintains that, regardless of when § 548(d)(1) says the transfer took place, when it did occur it was a transfer of an interest of the debtor in property.

Although our reasoning differs from the district court's, we agree with the court's conclusion that the trustee may not set

aside Simons' title to the property. *See Coleman Company v. California Union Ins. Co.*, 960 F.2d 1529 (10th Cir.1992) (citing *Scivally v. Time Ins. Co.*, 724 F.2d 101, 103 (10th Cir.1983) ("trial court's decision will be affirmed if the record reveals another ground which supports the decision.")). The trustee has characterized the transfer that it seeks to set aside as a transfer of an interest in property from the debtor to Simons. We conclude, however, the debtor's interest in the property was transferred from the debtor to the state.

" 'What constitutes a transfer and when it is complete' is a question of federal law." *Barnhill v. Johnson*, — U.S. —, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992). "But that definition in turn includes references to parting with 'property and interests in property,' " which are concepts defined by reference to state law. *Id.* We note that under Colorado law when the debtor failed to pay its taxes, a lien was created on the property in favor of the state. C.R.S. § 39–1–107. This lien was subsequently sold to Simons at the tax sale. Thus, as to the tax lien itself, Simons received his interest in the property from the state, not from the debtor. Simons had no dealings at all with the debtor. Similarly, when Simons presented the Certificate of Purchase for the lien to the county treasurer, he was issued a deed to the property from the state. Upon the signing of the treasurer's deed, the debtor's interest in property, if it were "transferred," was transferred by operation of law from the debtor to the state, which in turn transferred all interest in the property to Simons. C.R.S. § 39–11–136 ("The deed shall be signed by the treasurer in his official capacity and when so signed shall vest in the purchaser all the right, title, interest, and estate of the for-

mer owner in and to the land conveyed and also all right, title, interest, and claim of the state thereto.") The interest in the property must have passed to the state in order for the state to issue a deed conveying the property to Simons. *See* C.R.S. § 39–11–120 ("[T]he treasurer shall make out a deed for each such lot ... for which a tax lien was sold and which remains unredeemed and deliver the same to such purchaser or lawful holder of such certificate....")

Thus, the debtor's interest in property was transferred to the state. The state is the initial transferee of the debtor's property. Under the Bankruptcy Code, Simons is considered an immediate transferee of the initial transferee. Although § 550 of the Code authorizes the trustee in certain circumstances to recover the value of the property transferred from either the initial transferee or a subsequent transferee (*see* 11 U.S.C. § 550(a)(1) and (a)(2)), in order to recover from a subsequent transferee the trustee must first have the transfer of the debtor's interest to the initial transferee avoided under § 548. *See* § 550(a): "*[T]o the extent that a transfer is avoided under section ... 548 ...* the trustee may recover, for the benefit of the estate, the value of such property from [the initial transferee or any immediate transferee of the initial transferee]." (emphasis added). The trustee has made no attempt to have the transfer from the debtor to the state avoided under § 548(a)(2). Accordingly, we need not make a determination of whether the transfer from the debtor to the state could be avoided under that section.[1] In the absence of such a showing, however, the trustee has not demonstrated any basis for recovering the property from Mr. Simons. *Cf.* 11 U.S.C. § 550.

---

1. Ironically, the only one to raise this issue was Mr. Simons himself, who asserted in his testimony that *the trustee ought to bring the action* against the county treasurer because the trustee was attacking the validity of a state deed.

There are few reported cases concerning attempts to avoid tax deeds as fraudulent conveyances under § 548. We are not aware of any bankruptcy case in which a trustee has successfully brought an action against a state to avoid the issuance of a tax deed. This may be attrib-

utable to the immunity of the state from suit. Regardless of any such problem, the trustee *may not simply bypass the state's involvement* in the transaction. The tax lien foreclosed upon in this case was transferred from the state to Simons. The deed to the property was issued by the state and shows that the property was granted by the state to Simons. The trustee may not set aside such a transfer of property by the state as fraudulent without bringing the state into the action.

We believe this view of the tax lien foreclosure "transfer" is both proper and necessary. The state of Colorado, like most states, has adopted a system designed to promote the fundamental interest of the state in collecting taxes on property.[2] The state does this by allowing third persons to pay the taxes due on property in exchange for the state's lien against the property. If the owner of the property does not pay off the lien within the statutory period, the holder of the lien may obtain a deed to the property from the state. The failure to pay the taxes due results in a forfeiture of the original owner's interest in the property, by operation of law, to the state, which then grants title to the property to the holder of the lien free and clear of any other claims. The trustee may not bypass the interest of the state in the property by characterizing the transaction as a transfer of the debtor's interest to Simons.

For the reasons set forth above, we conclude that the district court correctly found that the trustee could not recover from appellee Simons. The judgment of the district court is therefore AFFIRMED.

SEYMOUR, Circuit Judge, dissenting.

I regret that I am unable to join in the majority opinion. In my view, the majority's analysis is based on a faulty legal premise which in effect nullifies the carefully integrated provisions of the Bankruptcy Code governing avoidable transfers. The majority states that because Simons received the property from the state rather than directly from the debtor, the trustee must seek recovery only from the state and cannot proceed against Simons even if the transfer is avoidable under 11 U.S.C. § 548 (1988). See maj. op. at 580. Under the majority's view, the trustee's ability to recover an avoidable transfer could always be defeated simply by a transfer from the initial transferee to another. The Code, however, specifically provides to the contrary. If the transfer is avoidable under the criteria set out in section 548, section 550 permits the trustee to seek recovery from Simons without proceeding against the state.[1] Because the majority's position renders section 550 meaningless, I must respectfully dissent.

### I.

The underlying undisputed facts are briefly as follows. Prior to December 1, 1983, debtor Slack–Horner Foundries owned real property in Boulder County, Colorado, upon which its foundry is situated. On December 1, 1983, the Boulder County Treasurer conducted a tax sale of the property for unpaid 1982 taxes, at which Simons made a successful bid of $8,638.34. On December 10, 1987, after the applicable redemption periods had expired, Simons obtained a treasurer's deed to the property, which he recorded on December 11. During the period between the tax sale in 1983 and conveyance of the treasurer's deed in 1987, Simons paid taxes on the property in a total amount of $66,134.61. In 1988, Simons sold the property for $170,000 to a third party not involved in these proceedings. When the purchaser defaulted, Simons regained title in 1989 through foreclosure.

The debtor filed a petition for bankruptcy on September 23, 1988. The trustee

---

**2.** The trustee asserts that "there is no meaningful distinction between [mortgage] foreclosure sales and tax sales for purposes of the application of § 548." Appellant's Br. at 13. While we need not decide that issue, we would point out that there are fundamental state interests at stake in the collection of taxes that are not implicated in a debtor-creditor relationship between, for example, a mortgagor and mortgagee. And while the power of the trustee to avoid fraudulent transfers appears to be very broad in scope, the history of § 548 raises the question of whether Congress drafted that section with the intention of interfering with state laws concerning the forfeiture of property for nonpayment of taxes or whether Congress could authorize the trustee to avoid a deed issued by the state without expressly stating so in the language of the statute. Cf. *United States v. Nordic Village, Inc.*, — U.S. —, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992).

**1.** Thus, § 550(b)(2) "is intended to prevent a transferee from whom the trustee could recover from transferring the recoverable property to an innocent transferee ... that is, 'washing' the transaction through an innocent third party." Sen.Rep. No. 989, 95th Cong., 2d Sess. 90 *reprinted in* 1978 U.S.C.C.A.N. 5787, 5876.

sought to recover the property from Simons, asserting that the tax sale proceedings resulted in an avoidable transfer under 11 U.S.C. § 548(a)(2). That section allows the trustee to avoid any transfer of a debtor's interest in property made within one year of the bankruptcy filing if the debtor received less than reasonably equivalent value and was insolvent at the time of the transfer. The bankruptcy court determined that the transfer occurred upon recordation of the treasurer's deed on December 11, 1987, at which time the debtor was insolvent. The court further ruled that because under Colorado law the debtor's right to redeem the property had expired upon the issuance of the treasurer's deed on December 10, the transfer on December 11 did not convey any interest of the debtor in the property as required by section 548. Accordingly, the bankruptcy court held that the transfer was not avoidable. The trustee appealed to the district court which substantially adopted the bankruptcy court's analysis and conclusions.

## II.

The Bankruptcy Code defines "transfer" to include "foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101(54). The extinguishment of an equity of redemption is thus deemed a transfer for purposes of the Code even though the right is cut off by foreclosure rather than actually transferred.[2] This foreclosure constitutes the transfer with which we are concerned in evaluating the trustee's claim under section 548. The majority confuses assessing the avoidability of a transfer under section 548 with determining those transferees liable under section 550.

The bankruptcy estate under 11 U.S.C. § 541(a) is comprised of all the debtor's legal or equitable interests in property as of the commencement of the case. The estate also includes any interest in property that the trustee recovers under section 550, see id. § 541(a)(3), which includes prop-

erty fraudulently transferred under section 548, see id. § 550(a). Thus, the trustee can use section 548 to recover property in which the debtor has lost his interest if that loss occurred within one year of the filing of the bankruptcy action and otherwise meets the test of section 548.

To establish an avoidable transfer under section 548, the trustee must show: (1) transfer of an interest of the debtor; (2) within one year of the bankruptcy filing; (3) for less than equivalent value; (4) when the debtor is insolvent. Here, the debtor's equity of redemption was foreclosed by the issuance of the treasurer's deed, and this foreclosure is a transfer within the meaning of section 548. This foreclosure-transfer occurred within one year of the bankruptcy filing, and the debtor was insolvent at the time of the transfer. Under section 548(a), therefore, the trustee can avoid the transfer if the debtor received less than equivalent value, an issue not resolved below.

Significantly, section 550 provides that if a transfer is avoidable under section 548, the trustee may recover from the initial transferee or from "any immediate or mediate transferee of such initial transferee," 11 U.S.C. § 550(a)(2). Even adopting the majority's view that all of the debtor's interest in the property passed to the state as the initial transferee[3] and then to Simons as the immediate transferee of the initial transferee, section 550 nonetheless authorizes the trustee to recover the property from Simons if the transfer is avoidable.

The majority believes it unnecessary to determine whether the transfer is avoidable, stating "the trustee has not shown that any interest of the debtor in property was transferred to the appellee Simons and has not demonstrated any basis for recovering the property from him." Maj. op. at 580. Both of these propositions are incorrect. First, Simons now holds property that once belonged to the debtor. Thus he

---

2. Foreclosure is legally defined as "[to] shut out, to bar, to destroy an equity of redemption." *Black's Law Dictionary* 581 (6th ed. 1990).

3. In my judgment, the foreclosure of an equity of redemption by the issuance of a treasurer's deed simply cuts off the debtor's right of redemption, see n. 2 supra, rather than conveying that right to the state.

is clearly a transferee, albeit not an initial transferee, of that property. The majority assumes that the trustee can only recover from a transferee who receives property *directly* from the debtor. However, section 548 does not set out such a requirement as an element of an avoidable transfer; that section simply does not address transferee liability. Indeed, as I have pointed out, section 548 includes as a "transfer" the foreclosure of an equity of redemption. Second, section 550, which is directed to those transferees from whom a trustee may recover, specifically authorizes a trustee to proceed against a transferee who does *not* receive the property directly from the debtor.[4] This specific authorization, together with the fact that section 548 simply does not speak to the issue of those transferees from whom a trustee may recover, leaves the majority's position not only legally unsupported but directly contrary to the applicable bankruptcy provisions.

Indeed, I have found no case adopting the majority's analysis.[5] In other cases where a debtor-in-possession or a trustee has brought an adversary proceeding to set aside a transfer after a tax sale, the plaintiff, as here, did not seek recovery from the governmental entity that had sold the property for taxes. *See, e.g., Hall v. Quigley (In re Hall)*, 131 B.R. 213 (Bankr.N.D.Fla. 1991); *Allegheny Int'l Credit Corp. v. De-Bois Inv. Group (In re Allegheny Int'l Credit Corp.)*, 128 B.R. 125 (Bankr. W.D.Pa.1991); *War Eagle Floats, Inc. v. Travis (In re War Eagle Floats)*, 104 B.R.

398 (Bankr.E.D.Okl.1989); *Louis L. Lasser & Stanley M. Kahn v. Robins Nest Dev. Corp. (In re Louis L. Lasser & Stanley M. Kahn)*, 68 B.R. 492 (Bankr.E.D.N.Y.1986). Although the analysis employed in those cases varies, none of them holds that recovery against the subsequent transferee is precluded because the trustee did not go against the initial transferee, the state.

The basic flaw in the majority's analysis is its failure to distinguish between section 548 avoidability and section 550 recoverability. "The Code specifically 'separates the identification of avoidable transfers ... from the identification of those who must pay....'" *Harrison v. Brent Towing Co., Inc. (In re H & S Transp. Co., Inc.)*, 939 F.2d 355, 358 (6th Cir.1991) (quoting *Levit v. Ingersoll Rand Fin. Corp.*, 874 F.2d 1186, 1196 (7th Cir.1989)). Section 548 describes those transfers of the debtor's property interests which the trustee may avoid, while section 550 sets out those transferees from whom the trustee may recover the property or its value. "Section 550 prescribes the liability of a transferee of an avoided transfer, and enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee." Sen.Rep. No. 989, 95th Cong., 2d Sess. 90, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5876. If the transfer is avoidable under section 548, "we then look to section 550(a) to determine to whom the trustee may look for recovery of the property." *Harrison*, 939 F.2d at 358 (footnote omitted).

---

**4.** Section 550 does provide a good faith defense to such a transferee. *See* 11 U.S.C. § 550(b). When a good faith defense is established, the trustee may not be able to recover the property itself even when the property was the subject of an avoidable transfer under section 548. Simons makes a general assertion of good faith on appeal. However, the good faith issue was not addressed by the lower courts and obviously presents fact issues precluding our consideration on appeal.

**5.** The majority defends its interpretation of the Bankruptcy Code as necessary to preserve the state's interest in collecting taxes. However, this interest is already accommodated in other ways. A trustee is barred by the Eleventh Amendment from bringing an action against a

state to recover an avoidable transfer. *See generally Hoffman v. Connecticut Dep't of Income Maintenance*, 492 U.S. 96, 104, 109 S.Ct. 2818, 2824, 106 L.Ed.2d 76 (1989) (trustee actions "under §§ 542(b) and 547(b) of the Code are barred by the Eleventh Amendment"). Moreover, tax sales remain a viable means of recovering unpaid taxes because both the state and the tax sale buyer can be protected in an action under section 548 by factoring their interest into whether the transfer is avoidable, *see, e.g., War Eagle Floats v. Travis (In re War Eagle Floats, Inc.)*, 104 B.R. 398, 401 (Bankr. E.D.Okla.1989) (assessing "reasonably equivalent value" in light of need to avoid chilling potential bidding), and by the good faith provisions of section 550.

Accordingly, I must reject the majority's conclusion that we need not address whether the transfer is avoidable. The issues raised on appeal require that we consider it. The bankruptcy court's opinion, adopted in essence by the district court, concludes that section 548 is not satisfied. As the majority describes, maj. op. at 579, the bankruptcy court ruled that the transfer for purposes of section 548 occurred when the treasurer's deed was recorded. That court held that because the debtor's interest had previously passed to Simons when the treasurer's deed was issued, the "transfer" accomplished by recordation of the deed was not of an interest of the debtor. This holding is wrong in two respects. First, the execution of a deed and its recordation cannot be split into two separate transfers. There was only one transfer of an interest of the debtor, which occurred in stages, beginning when issuance of the treasurer's deed extinguished the debtor's right of redemption and ending when the deed was recorded. This result is required by section 548(d)(1), which provides that

> a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee.

11 U.S.C. § 548(d)(1). Contrary to the view of the bankruptcy court, issuance of the treasurer's deed alone is not a completed transfer under this provision, because until recordation a person wishing to buy the equity of redemption does not have notice that the right to redeem has been cut off by the treasurer's deed. Second, even if it were a completed transfer, as I discuss above, section 550 nonetheless authorizes recovery from a second transferee. Indeed, both the bankruptcy court and the majority make essentially the same mistake in failing to recognize that under section 550, the trustee may in certain circum-

stances recover property subject to an avoidable transfer even if that property has been subsequently transferred again.

Because transfer of an interest of the debtor was not completed until recordation of the treasurer's deed, and because this transfer occurred within one year of the bankruptcy filing and while the debtor was insolvent, the dispositive issue is whether the debtor received less than equivalent value under section 548(a)(2)(A). Neither the bankruptcy court or the district court found it necessary to reach this issue. Courts in general are split on the legal standard to be used to ascertain equivalent value in a foreclosure situation. *See, e.g., In re Hall,* 131 B.R. at 216 (noting differing lines of cases). The majority of circuits that have addressed the issue adopted a case-by-case consideration of the relevant facts. *See Grissom v. Johnson (In re Grissom),* 955 F.2d 1440, 1445 (11th Cir. 1992); *Barrett v. Commonwealth Fed. Sav. & Loan Ass'n,* 939 F.2d 20, 23–24 (3d Cir.1991); *Cooper v. Ashley Communications, Inc. (In re Morris Communications NC, Inc.),* 914 F.2d 458, 466–67 (4th Cir. 1990); *Bundles v. Baker (In re Bundles),* 856 F.2d 815, 824 (7th Cir.1988); *but see Durrett v. Washington Nat'l Ins. Co.,* 621 F.2d 201, 203–04 (5th Cir.1980) (subsequently interpreted as setting reasonably equivalent value at no less than 70% of fair market value);[6] *Lawyers Title Ins. Co. v. Madrid (In re Madrid),* 21 B.R. 424 (Bankr.9th Cir.1982), *aff'd on other grounds,* 725 F.2d 1197 (9th Cir.), *cert. denied,* 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984) (subsequently interpreted as holding that winning bid at regularly conducted, non-collusive sale presumed to be reasonably equivalent value). Such factors include, as well as the fair market value, whether the property was fairly appraised, widely advertised, and bid upon competitively. *See, e.g., Bundles,* 856 F.2d at 824. In my judgment, the case-by-case approach is persuasive. *See id.* I would therefore adopt that position and remand

---

**6.** Some language in Fifth Circuit opinions subsequent to *Durrett* could be viewed as a retreat from the 70% rule. *See FDIC v. Blanton,* 918 F.2d 524, 531 n. 7 (5th Cir.1990); *Sandoz v. Bennett (In re Emerald Oil Co.),* 807 F.2d 1234, 1238 n. 6 (5th Cir.1987).

for further factual inquiry under that standard. I thus respectfully dissent.