**In re Frances L. POWERS, Debtor.**

**Bankruptcy No. BK–LV–88–0354–RCJ.**

United States Bankruptcy Court,
D. Nevada.

July 18, 1988.

David Reeves, Las Vegas, Nev., for movant.

Richard McKnight, Las Vegas, Nev., for respondent.

## MEMORANDUM DECISION

### ROBERT CLIVE JONES, Chief Judge.

Movant Charles Jeffrey seeks an order validating his purchase of the Debtor's property at a postpetition foreclosure sale under Bankruptcy Code § 549(c), 11 U.S.C. § 549(c), or granting retroactive relief from the automatic stay of Bankruptcy Code § 362(a). 11 U.S.C. § 362(a). For the reasons set forth below, the motion is denied.

## FACTS

Debtor Frances Powers ("Powers") owned residential real property in Clark County, Nevada. The property was subject to two deeds of trust: a first in the amount of $12,193.93 and a second in the amount of $47,414.93. Powers defaulted under the second trust deed, and on October 19, 1987, the beneficiary recorded a notice of breach and election to sell. A trustee's sale was scheduled for February 9, 1988 at 10:00 A.M. At 9:45 A.M. on the date of the sale, the trustee contacted the bankruptcy court clerk's office to see if Powers had filed bankruptcy. She had not,

so the trustee proceeded with the sale at 10:00 A.M. Movant Charles Jeffrey, through an entity known as Private Properties, purchased the property by bidding the full amount due on the second deed of trust. Jeffrey, of course, took the property subject to the first deed of trust. Unbeknownst to the parties at the trustee's sale, Powers had filed a petition under Chapter 13 of the Bankruptcy Code at 9:55 A.M., five minutes before the sale. Less than an hour after the sale, at 10:59 A.M., Powers recorded a copy of her bankruptcy petition at the Clark County Recorder's Office. Two days later, on February 11, the trustee's deed upon sale was recorded.

Still unaware of Powers' bankruptcy, Jeffrey attempted to have her removed from the property. Jeffrey then learned of the bankruptcy and filed the present motion for validation of the postpetition sale under Bankruptcy Code § 549(c) or for retroactive relief from the automatic stay. Powers opposed the motion and, after an initial hearing, an evidentiary hearing was scheduled. The evidence indicates that the fair market value of the property is $82,000.00.[1] The evidence further indicates that Jeffrey paid $47,419.93 for the property, that he took title subject to a deed of trust with an outstanding balance of $12,193.93, and that he has paid other expenses on the property totaling about $450. Jeffrey therefore paid a total of $60,057 for the property.

After the evidentiary hearing, the court took the matter under advisement. This memorandum decision constitutes the court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

## DISCUSSION

Under Bankruptcy Code § 549(a), a trustee or debtor-in-possession may avoid a transfer of property of the estate that is made after the case is filed and that is not authorized by either the Code or the court. 11 U.S.C. § 549(a). Code § 549(c), how-

---

**1.** Two appraisals were submitted into evidence. One placed the value of the property at $81,000; the other valued the property at $83,000. For present purposes, the Court finds that the fair market value of the property is worth $82,000.

ever, creates an exception to this general rule. Section 549(c) provides in relevant part:

> (c) The trustee may not avoid under subsection (a) of this section a transfer of real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was [recorded] before such transfer is so perfected that a bona fide purchaser of such property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to the interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

In order to qualify for the exception created by § 549(c), the transferee, at minimum, must be a good faith purchaser without knowledge of the petition, and must have given "present fair equivalent value" for the property. In the case at bar, there is no dispute that neither Jeffrey nor anyone else at the foreclosure sale was aware that Powers filed bankruptcy just prior to the sale. He therefore satisfies the first of the above criteria.

■■■ Jeffrey, however, fails to satisfy the second criteria. The term "present fair equivalent value" is not defined in the Bankruptcy Code and there appear to be no reported cases squarely addressing the issue.[2] Jeffrey argues that cases construing the term "reasonably equivalent value" under Code § 548(a)(2) provide guidance on the issue at hand. Specifically, Jeffrey cites *Durett v. Washington Nat'l. Ins. Co.,* 621 F.2d 201 (5th Cir.1980). There, the Fifth Circuit held that a transfer could be avoided for inadequate consideration because the transferee had paid the debtor only 57.7% of the property's fair market value. The court also stated that it had been "unable to locate a decision ... which has approved the transfer for less than 70 percent of the market value of the property." *Id.* at 203.

Jeffrey asserts that the *Durrett* "70% test" should apply here, and that because he paid 73% of the fair market value of the property, the foreclosure sale should be validated under § 549(c). I disagree. First, I question whether the court in *Durett* established a "70% test". As noted above, *Durett* involved a transfer in exchange for a payment of only 57.7% of fair market value. The court did not state that 70% would be enough to prevent avoidance, but rather that it could find no cases which approved a transfer for less than that amount. Thus, whether the court meant to establish a "70% test" is open to question.

Even assuming that *Durrett* did establish a 70% test for adequacy of consideration, I would decline to apply that standard in construing § 549(c). *Durrett* was decided under § 67(d) of the former Bankruptcy Act. 11 U.S.C. § 107(d) (repealed). When Congress enacted the new Bankruptcy Code, § 67(d) of the Act served as the basis for new § 548(a). Under the latter provision, the trustee may avoid a transfer if, *inter alia*, the debtor received less than "reasonably equivalent value" in exchange for the transfer. 11 U.S.C. § 548(a)(2). In contrast, § 549(c) requires that the transferee have given *"present fair* equivalent value" in order to prevent the trustee from recovering the property. Both the legislative history and the case law are silent regarding whether these two terms were intended to yield different results. For two reasons, however, I believe that they were.

---

**2.** The only case that comes close to defining this term is *In re Billick,* 67 B.R. 670 (Bankr.W.D. Mo.1986). There, a transferee sought validation of a postpetition transfer under § 549(c). In what appears to be dicta, the court stated that a postpetition transfer of real property with $100,-000 in equity, in exchange for the transferee's release of a $21,000 claim against the estate "can hardly be regarded as 'reasonably equivalent value' within the meaning of the bankruptcy laws regulating fraudulent transfers." *Id.* at 677 (citing 11 U.S.C. § 548(a)(2)) (footnote omitted). The court does not mention "present fair equivalent value" and therefore does not appear to have been equating the two terms.

First, and most obvious, the two terms are different. If Congress intended the same standards for adequacy of consideration under both statutes, why did it not use the same language? Moreover, "present fair equivalent" connotes a more stringent standard than does "reasonably equivalent". It takes no citation of authority to say that "reasonable" is a broad and largely subjective legal term. "Reasonably equivalent" suggests a standard that tolerates a greater deviation from fair market value than does "present fair equivalent." The latter term, I believe, tolerates very little deviation from fair market value.

 Secondly, I believe Congress intended a more stringent standard under § 549 than under § 548 because the former statute involves *post* petition transfers whereas the latter statute involves *pre* petition transfers. The trustee should not be able to set aside a prepetition transfer where, assuming the other elements of § 548 are present, the transferee paid only slightly less than fair market value. Rather, the trustee should only be able to avoid prepetition transfers where the consideration was substantially inadequate. With a post-petition transfer, however, the property at issue became property of the estate immediately upon the filing of the debtor's petition. The property was then transferred out of the estate without court approval and, in some cases such as here, in violation of the automatic stay. In such a case, it is appropriate to require that the transferee give either fair market value, or something very close to it. In my view, 73% of fair market value is wholly inadequate to satisfy this requirement. Accordingly, I conclude that Jeffrey does not qualify for the protection of § 549(c).[3]

Finally, I deny Jeffrey's request for retroactive relief from the automatic stay. As is clear from the above discussion, there is substantial equity in the property. *See* 11 U.S.C. § 362(d)(2)(A). This equity cushion provides Jeffrey with adequate protection and there is no evidence of any other "cause" that would justify granting relief from the stay. 11 U.S.C. § 362(d)(1).

## CONCLUSION

Jeffrey's motion is denied and the parties are ordered to take the necessary steps to return title of the property to Powers. Jeffrey is entitled to assert a claim against the estate to the extent he gave value for the property at the sale. A separate order will be entered.

---

**3.** Jeffrey is entitled to assert a lien against the property to the extent that he gave value for it. By purchasing at the foreclosure sale, Jeffrey essentially stands in the position of the foreclosing entity—i.e., the second trust deed holder.