**In re Luz S.J. BAGO, Debtor.**

**William LITTLE, Movant,**

v.

**Luz S.J. BAGO, Respondent.**

**Bankruptcy No. LAX 92–84869–GM.**

United States Bankruptcy Court,
C.D. California.

Jan. 5, 1993.

William Little, in pro per.

Moses S. Hall, Hall & Coose, Fullerton, CA, for debtor, Luz Bago.

## MEMORANDUM OF OPINION RE MOTION FOR RELIEF FROM THE AUTOMATIC STAY

GERALDINE, MUND, Bankruptcy Judge.

William Little brings the instant motion for a determination that the trustee's sale that occurred on September 17, 1992 is entitled to protection under 11 U.S.C. § 549(c) and for an order annulling the automatic stay in order to allow Little to proceed with his unlawful detainer action in state court.

### FACTS

On July 30, 1992, Luz S.J. Bago, debtor herein, filed a Chapter 13 bankruptcy petition. On August 17, 1992, the case was dismissed on the ground that debtor failed to file a statement and/or plan as required under Bankruptcy Rule 1007(c). However, on September 3, 1992 the Court vacated the dismissal and reinstated the bankruptcy case.

Thereafter, on September 17, 1992, without knowledge of the reinstatement of the Chapter 13 case, Home Savings of America, holder of the first deed of trust on debtor's real property located at 741–743 N. Harvard Blvd., Los Angeles, California, conducted a foreclosure sale on the property. William Little purchased the property for $120,709.32 (10 cents above the minimum bid).

Within hours after the foreclosure sale had taken place, Home Savings of America was notified by the debtor that the Chapter 13 case had been reinstated.

On October 28, 1992, William Little's motion for relief from the automatic stay came on for hearing. William Little argued that he is a bona fide purchaser of the property and as such is entitled to protection under § 549(c) of the Code.[1] In addition, Little seeks an order annulling the automatic stay and allowing Little to proceed with his unlawful detainer action. Debtor filed an opposition to the motion arguing that the foreclosure sale violated the automatic stay provisions of § 362(a) of the Code and that Little is not entitled to protection under § 549(c) of the Code since Little did not pay present fair equivalent value for the property. Debtor argues that Little is only entitled to a lien on the property to the extent of the value given and may receive payment of this secured claim as provided under the Chapter 13 plan. This Court granted adequate protection (monthly payments to Little), ordered the debtor to file a complaint to set aside the foreclosure sale, and continued this motion to December 14, 1992.

At the time the property was foreclosed upon, the property was encumbered with the following liens: (a) a first deed of trust in favor of Home Savings of America in the sum of $120,709.22 [the foreclosing creditor]; (b) a second deed of trust in favor of Associates Financial in the sum of $89,640.59; (c) a third deed of trust in favor of Victor Lathe Works, Inc. in the sum of $22,500.00; and (d) taxes in the sum of $4064.94.

William Little alleges that the fair market value of the real property is $190,000.00. Debtor alleges that the fair market value of the property is $265,000.00. Neither party has submitted an appraisal report on the real property.

Prior to the continued hearing of December 14, 1992, the Court transmitted to both sides a tentative ruling on this matter. At the hearing each side asserted additional arguments. Debtor alleged that it was not required to record its notice in the office of the County Recorder of Los Angeles County because the bankruptcy was filed in Los Angeles County and the property is located in Los Angeles County and therefore Little does not qualify as a bona fide purchaser.

1. All references to "the Code" are to 11 United States Code.

Little noted that unless foreclosure sales were finalized under these circumstances, junior liens would be encouraged not to bid on the property on the assumption that the sale would be set aside.[2]

## DISCUSSION

11 U.S.C. § 362(a) provides that the filing of a bankruptcy petition "operates as a stay ... of any act to create, perfect, or enforce any lien against property of the estate...." Thus, any act conducted in violation of the automatic stay provision, unless excepted under § 362(b), is void and without effect. *In re Schwartz*, 954 F.2d 569 (9th Cir.1992). Here, Home Savings conducted its foreclosure sale of property of the estate in violation of the automatic stay. Such an act will, under normal circumstances, render the transaction void.

However, § 549(c) of the Code limits the application of § 362(a). Section 549(c) provides that:

"[t]he trustee may not avoid under subsection (a) of this section a transfer of real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to the interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected."

Thus, if the two-prong test of § 549(c) of the Code is satisfied, then the post-petition foreclosure sale may not be voided.[3]

The first prong of § 549(c) has been satisfied. At the time the foreclosure sale had taken place on September 17, 1992, no notice of the bankruptcy petition was on record with the County Recorder's Office.[4] In addition, William Little, the purchaser of the real property, had no knowledge, actual or constructive, of the reinstatement of the bankruptcy case and is considered a "good faith purchaser" for purposes of § 549(c). There is also no showing that Little had knowledge of the bankruptcy filing in the first place.

The second prong of § 549(c) requires a determination of "present fair equivalent value." Although both the Bankruptcy Code and the legislative history are silent as to the meaning of this term, at least one

---

**2.** In this particular case the junior lienholder did not bid on the property and has actively been involved in seeking to set aside this foreclosure sale. If the Court were to set aside the foreclosure sale, the direct beneficiary would be the holder of the junior lien, who failed to protect its rights as required by law.

**3.** If the test of "present fair equivalent value" is not met, Little will receive a lien on the property to the extent of the money that he paid. This provision has no guidance to the Court as to what the nature of that lien would be. In the situation at hand, would the second and third deeds of trust be reinstated? Would Little have a judgment lien and if so, at what interest rate (state or federal or the interest rate on the deed of trust that conducted the foreclosure sale)? Since this is a Chapter 13, would the debtor be allowed to repay the total amount over a three-year period of time or is this seen as a fully matured obligation secured solely by the principal residence and therefore not amenable to

extended cure? If the Court were to find that Little did not pay "present fair equivalent value," it would have to answer each of these questions.

**4.** Debtor argues that no notice is required in the county in which the case is commenced. However, this provision of Section 549 was amended in 1984 to create the current Section 549(c). *Prior to that time* Section 549(c) included the following sentence: "A good faith purchaser, without knowledge of the commencement of the case and for less than present fair equivalent value, of real property located other than in the county in which the case is commenced, under a transfer that the trustee may avoid under this section, has a lien on the property transferred to the extent of any present value given, unless a copy of the petition was so filed before such transfer was so perfected." To the extent that debtor cites cases interpreting the statute prior to the 1984 effective date of the amendment, those cases are irrelevant.

case suggests that the term "connotes a more stringent standard than does 'reasonably equivalent value'.... 'Reasonably equivalent' suggests a standard that tolerates a greater deviation from fair market value than does 'present fair equivalent.' The latter term ... tolerates very little deviation from fair market value." *In re Powers*, 88 B.R. 294, 297 (Bankr.D.Nev. 1988).

In *In re Powers*, a trustee's sale was conducted five minutes after a Chapter 13 petition had been filed. The property was sold without knowledge of the bankruptcy filing. The question presented was whether the third party purchaser paid "present fair equivalent value." The court declined to apply the 70% test set forth in *Durrett v. Washington National Insurance Co.*, 621 F.2d 201 (5th Cir.1980). The court stated that the term "reasonably equivalent value" under § 548(a)(2) and the term "present fair equivalent value" under 549(c) "were intended to yield different results." The court reasoned that if Congress had intended the same meaning then it would have used the same language. Rather, Congress "intended a more stringent standard under § 549 than under § 548 because the former statute involves *post* petition transfers whereas the latter statute involves *pre* petition transfers." *Post* petition transactions affect property of the estate which is subject to certain controls, like court approval of transfers and the automatic stay. In the final analysis the court ruled that 73% of fair market value was wholly inadequate.

Although there is no definitive authority concerning the phrase "present fair equivalent value," recently the Ninth Circuit ended the *Durrett v. Madrid* [5] controversy concerning "reasonably equivalent value" as it pertains to a pre-petition transfer. In interpreting the meaning of the term "reasonably equivalent value" under § 548(a)(2), the Ninth Circuit in *In re BFP*, 974 F.2d 1144 (9th Cir.1992) concluded that "the price received at a noncollusive, regularly conducted foreclosure sale establishes irrebuttably reasonably equivalent value." The Court also departed from the 70% test set forth in *Durrett*. The Court based its decision on certain policy considerations, namely to establish a finality to the foreclosure process and to guard against the potential for discounting of the property's true market value. The Court stated that "allowing a bankruptcy court to undo a foreclosure sale carries with it the strong potential to destabilize state mortgage transactions."

It is to be noted that *In re Powers* preceded the Ninth Circuit opinion of *In re BFP*. Therefore, it is unclear whether *In re Powers* would have been decided differently under the Ninth Circuit analysis of *In re BFP*.

Since there is no clear Congressional intent in the use of a different phrase under § 548 and § 549 of the Bankruptcy Code, the Court must look at the underlying policies that will be enhanced by its interpretation. In *Powers* the Court decided that the primary goal is to allow the bankruptcy estate to manage its property and to protect the estate from removal of that property, even if it reaches the hands of a bona fide purchaser. In *Durrett*, the Court had a similar goal—to make sure that the maximum amount of property becomes part of the bankruptcy estate for fair distribution to the creditors. *BFP* has determined that it is the greatest benefit to debtors in general and to society as a whole if foreclosure sales become final so that bidders will truly pay a fair value for the property and the bidding will not be chilled by fear of having the sale tied up in court.

It appears to this Court that the underlying purpose of § 548(a)(2)(A) and § 549(c) is the same—to protect good faith purchasers. Therefore, this Court does not believe that the priorities are shifted merely because the transaction took place post-petition. If the buyer is a good faith purchaser, he must be protected. If the seller (who violates the automatic stay) has done so in bad faith, the estate can be compensated by obtaining a judgment against the

5. *In re Madrid*, 21 B.R. 424 (Bankr. 9th Cir. 1982), aff'd. on other grounds, 725 F.2d 1197 (9th Cir.), *cert. denied*, 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984).

one who violated the automatic stay. This Court can see no reason to deviate from the theories of *In re BFP*.

Therefore, it appears that the policy reasons underlying the *In re BFP* decision, would apply equally well to § 549(c): that is, a third party purchaser who deals with the debtor in good faith, either pre- or post-petition, should be protected. We want to encourage people to deal freely in the market place without fear that the transaction can be undone. Further, it is good public policy to encourage junior lienholders to attend foreclosure sales and bid in at that time. This will reduce the amount of unsecured debt that is owed and will increase the price to purchase property at a foreclosure sale. Thus, in order to bring finality to the foreclosure process and to ensure that the price paid at foreclosure sales will be a true reflection of the property's fair market value, it is necessary to limit the trustee's or the debtor's avoidance power.

This Court finds that the Ninth Circuit's analysis in *In re BFP*, applies to post-petition transactions as well as pre-petition ones. Therefore, the price paid at a non-collusive, regularly conducted foreclosure sale establishes "present fair equivalent value" under § 549(c) of the Code.

Under the facts of the present case, William Little purchased the property for $120,709.32. Since it is undisputed that the foreclosure sale was non-collusive and regularly conducted, this price constitutes "present fair equivalent value."

### CONCLUSION

For the foregoing reasons, the price paid by William Little at the foreclosure sale constitutes "present fair equivalent value." Thus, the Court hereby grants Little's motion to annul the automatic stay and to allow Little to proceed with his unlawful detainer proceeding in the state court.