**40235 WASHINGTON STREET CORP., Plaintiff,**

v.

**W.C. LUSARDI, Defendant.**

**Civ. No. 90–1472–R.**

United States District Court,
S.D. California.

Oct. 10, 2001.

---

James W. Huston, Gray Cary Ware and Freidenrich, San Diego, CA, for plaintiff.

James A. Testa, Testa and Associates, Vista, CA, L. Scott Keehn, Robins and Keehn, San Diego, CA, for defendant.

CORRECTED ORDER GRANTING WASHINGTON STREET'S MOTION FOR DECLARATORY RELIEF AND TO QUIET TITLE; AND DENYING LUSARDI'S MOTION FOR REIMBURSEMENT UNDER CALIFORNIA REVENUE & TAXATION CODE § 3728

RHOADES, District Judge.

## I. Overview

Since 1990, Washington Street and Lusardi have litigated title to an apartment complex in Riverside County, California. They are before the Court on two motions: (1) Washington Street's motion to dismiss, as a matter of law, Lusardi's claim to be a good faith purchaser under 11 U.S.C. § 549(c); (2) Lusardi's motion for reimbursement under California Revenue and Taxation Code § 3728. For the reasons stated below, the Court grants Washington Street's motion to dismiss and denies Lusardi's motion for reimbursement.

## II. Background[1]

Washington Street was created on February 20, 1990. Eight days later, it purchased an apartment complex (the Sun Dunnes) located on tax-defaulted property.

At that time, the Sun Dunnes had two liens on it: a $447,000 tax lien along with a $277,000 first mortgage. The following day, Washington Street filed a Chapter 11 bankruptcy petition. Despite receiving a faxed copy of the bankruptcy petition, a week later, the Riverside County tax collector sold the Sun Dunnes at a tax foreclosure sale to Lusardi for $269,500. Lusardi was unaware of the petition.

After tax sale, the bankruptcy court, hearing Washington Street's Chapter 11 petition, dismissed it as being filed in bad faith. Specifically, the bankruptcy court found that Washington Street had no viable reorganization plan.

To date, Washington Street has not relinquished possession of the Sun Dunnes, and Riverside County has not returned Lusardi's money.

From these simple facts, eleven years of legal wrangling ensued. In total, this case has seen one bankruptcy filing; two state court lawsuits; one state court appeal; one federal lawsuit; and two federal appeals.

In 1991, Washington Street sued Lusardi in this Court, arguing that the sale to Lusardi was void because it had occurred in violation of the automatic stay. *See* 11 U.S.C. § 362(a) (providing an automatic stay of attempts to gain possession of property if the owner has declared bankruptcy).

Lusardi moved to dismiss this case, arguing that the tax sale was only voidable, not void. In the alternative, Lusardi moved to stay the federal proceedings pending the outcome of the case he had filed in state court.

This Court agreed with Lusardi. Relying on the Ninth Circuit Bankruptcy Appellate Panel's decision in *In re Schwartz,*

---

1. This abbreviated statement of facts is for context only. The Court's 8/19/98 Order contains a more detailed factual description.

119 B.R. 207 (9th Cir. BAP 1990), the Court held that the sale had not been voided. Accordingly, the Court dismissed Washington Street's case. In the alternative, the Court stayed the federal case while Lusardi's suit against Washington Street proceeded in state court.

Washington Street appealed the Court's rulings. While the appeal was pending, the Ninth Circuit overruled the Bankruptcy Appellate Panel's *Schwartz* decision, holding that violations of the automatic stay are void, not voidable. *See In re Schwartz*, 954 F.2d 569, 574 (9th Cir.1992). Thus, this Court's dismissal of Washington Street's case was wrong. When the Ninth Circuit decided Washington Street's appeal, it vacated the dismissal order but affirmed the stay. *See 40235 Wash. St. Corp. v. Lusardi*, 976 F.2d 587 (9th Cir. 1992). The federal case then lay dormant for five years.

In 1996, the California Court of Appeals heard Lusardi's suit against Washington Street. The court, relying on the Ninth Circuit's *Schwartz* opinion, held that Lusardi's tax deed was void, not voidable.

In 1997, Lusardi returned to this Court, filing an answer and counterclaim to Washington Street's dormant federal case. In the counterclaim, Lusardi alleges that his purchase of the Sun Dunnes fell within 11 U.S.C. § 549(c), an exception to the automatic stay allowing certain good faith purchasers giving "present fair equivalent value" to keep real property purchased in violation of the automatic stay. In the alternative, Lusardi claims, under California Revenue and Taxation Code § 3728, that Washington Street must reimburse him money spent buying and then pursuing title to the Sun Dunnes. The Court granted Lusardi's motion to lift the stay, allowing the case to proceed.

## III. Discussion

The case raises two issues: one, whether Lusardi qualifies as a good faith purchaser under § 549(c); two, whether he is entitled to reimbursement under California Revenue and Taxation § 3728. On March 1, 2001, trial was scheduled to begin. Based on recent discovery, it became apparent that Lusardi would be unable, as a matter of law, to show that he paid "present fair equivalent value" as required by § 549(c). Accordingly, the Court orally granted Washington Street's Rule 50(a) motion to dismiss Lusardi's counterclaim.

After losing on § 549(c), Lusardi, echoing an earlier ruling by the Court (*see* 1/19/99 Order at 5–7), claimed that Washington Street must reimburse him the purchase price of the property as required by § 3728. Otherwise, he continued, his tax deed could not be declared void for violating the automatic stay. Washington Street argued the opposite, that § 3728 did not apply. At a hearing held on April 23, 2001, the Court affirmed its earlier ruling—that § 3728 applied—and asked the parties to submit a cost accounting. After reconsidering the question, the Court decides that § 3728 is preempted by federal bankruptcy law and, therefore, inapplicable.

## A. Good Faith Purchaser Exception: 11 U.S.C. § 549(c)

Determining the holder of title to the Sun Dunnes depends on a two-step analysis. The first step is determining whether § 549(c) creates an exception to the automatic stay's void rule when the voided transfer was initiated by someone other than the debtor (in this case Riverside County). *See Schwartz*, 954 F.2d at 574 (holding that violations of the automatic stay are void). The second step is determining whether Lusardi meets the substantive requirements of § 549(c). If the

answer to both questions is yes, then Lusardi's purchase of the Sun Dunnes is valid despite the automatic stay violation. Because, in a previous order, the Court held that § 549(c) is an exception to § 362(a) (*see* 1/19/99 Order at 9–12), an issue here is whether Lusardi satisfies § 549(c).

Title 11 United States Code, § 549(c), provides in pertinent part:

The trustee may not avoid ... a transfer of real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to the interest of such good faith purchaser.

11 U.S.C. § 549(c). Essentially, § 549(c) creates a three-part test: (1) was Lusardi a "good faith purchaser without knowledge of the commencement of the case;" (2) did he pay "present fair equivalent value;" (3) did he perfect his tax deed before Washington Street recorded a copy or notice of the bankruptcy petition in Riverside County.[2] Lusardi carries the burden of proving all three conditions. *See* Fed.R.Bankr.P. 6001.

■ Determining "present fair equivalent value" requires a comparison between the price actually paid at the tax sale for the Sun Dunnes, $269,500, and its worth or "benchmark" value, $615,000 (the value set by Lusardi's expert, *see* Hess, 10/25/00

---

2. Although not argued by Washington Street, Lusardi likely cannot satisfy this third condition. A § 549(c) purchaser must perfect (i.e., comply with the state recording statute) its interest before a copy or notice of the bankruptcy petition is recorded. In 1990, California was a "race-notice" state, *see* Cal.Civ. Code § 1214, meaning that Lusardi must have purchased his tax deed without knowledge of the bankruptcy petition (the "notice" element) and recorded it before Washington Street recorded a copy or notice of the bankruptcy petition in Riverside County (the "race" element). *See In re Walker*, 861 F.2d 597 (9th Cir.1988).

Whether Lusardi purchased the property ignorant of Washington Street's bankruptcy petition is not at issue here. Thus, whether Lusardi satisfies § 549(c)'s perfection conditions turns on whether he recorded his tax deed before Washington Street recorded notice of the bankruptcy petition.

After the tax sale, Riverside County refused to deliver or record Lusardi's tax deed until Washington Street's bankruptcy petition was dismissed. Thus, presumably, Lusardi was unable to satisfy the "race" element because Washington Street filed a notice of the petition in Riverside County sometime between the tax foreclosure sale and the dismissal of the bankruptcy petition. (The Court must presume this because Washington Street offers no evidence that it recorded notice of its bankruptcy petition in Riverside County before Lusardi recorded his deed. Somewhere, buried in the thousands of pages of briefs in this case, there may be such evidence. However, the Court has no intention of digging through the parties' papers "like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991).)

Riverside County's refusal to give Lusardi the deed raises a novel question. Can Riverside County's refusal to turnover Lusardi's tax deed defeat his § 549(c) claim? The answer is yes, it can. Section 549(c) questions demand prompt resolution. *See In re Walker*, 861 F.2d at 600. Courts must be able to look quickly to county property rolls to see whether the § 549(c) purchaser has taken the necessary steps under state law to perfect its claims against any hypothetical subsequent bona fide purchaser. *See id.* citing *In re Ward*, 837 F.2d 124, 126–27 (3d Cir.1988). Otherwise, courts would be required to make an ad hoc determination of respective rights of the § 549(c) purchaser versus other potential purchasers. *See id.* Such delay is inappropriate. Based on this policy consideration, if the Court were ruling on this question, it would hold that Lusardi fails § 549(c)'s perfection requirement.

Appraisal Report, at 2, 4). *See BFP v. Resolution Trust Co.*, 511 U.S. 531, 540, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994); *In re Shaw*, 157 B.R. 151, 154 (9th Cir. BAP 1993). If the price paid is the "present fair equivalent" of the Sun Dunnes' benchmark value, then § 549(c)'s value condition is satisfied.

Here, there are two competing benchmarks: close-to-fair-market value; or the winning bid at a tax foreclosure sale properly conducted according to state foreclosure law. For two reasons, the Court finds that the proper benchmark value for § 549(c), in the context of a state conducted tax foreclosure sale, is something close to market value. First, close-to-fair-market value is consistent with the language of § 549(c) and the fundamental policies guiding interpretation of the Bankruptcy Code (the "Code"). Second, close-to-fair-market value is not inconsistent with the Supreme Court's holding and analysis in *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994).

### 1. Text of 11 U.S.C. § 549(c) and Bankruptcy Policy

■ To determine the appropriate benchmark, the Court looks first to the statute. *See BFP*, 511 U.S. at 537, 114 S.Ct. 1757 (1994). Section 549(c) gives no definition of "present fair equivalent value." *See In re Shaw*, 157 B.R. at 153. Thus, as other courts have done, the Court will parse the three key terms in § 549(c): "present," "fair equivalent," and "value" to determine the appropriate benchmark. *See, e.g., In re T.F. Stone Co., Inc.*, 72 F.3d 466 (5th Cir.1995).

Looking first at "value," it sheds little light on determining the proper benchmark. Unlike other Code sections, *see, e.g.*, 11 U.S.C. § 548(d)(2)(A), § 549 contains no definition of value. Although appearing throughout the Code, "value" has no single meaning. *See BFP*, 511 U.S. at 551 n. 1, 114 S.Ct. 1757 (5–4 decision) (Souter, J, dissenting). In 11 U.S.C. § 522, it means "fair market value." *See* 11 U.S.C. § 522(a)(2). In 11 U.S.C. § 548, it can mean the price received at a foreclosure sale. *See BFP*, 511 U.S. at 545, 114 S.Ct. 1757. Outside of the foreclosure sale context, it can mean something closer to fair market value. *See id.* In 11 U.S.C. § 506, the meaning of "value" varies with the purposes of the valuation, which in turn varies with the particular Code provision to which the valuation pertains. *See* 4 L. King, *Collier on Bankruptcy* ¶ 506.03[7] (2001). Whatever benchmark § 549(c) requires, "value" is too malleable to provide much guidance.

Looking next at the term "fair equivalent," it too provides little guidance. It is akin to the term "reasonably equivalent" from 11 U.S.C. § 548. *See In re Stone*, 72 F.3d at 470 (5th Cir.1995). Like § 549(c), § 548 requires a comparison between the price paid and the benchmark value. *See BFP*, 511 U.S. at 546, 114 S.Ct. 1757. In *BFP*, the Supreme Court found "reasonably equivalent" ambiguous as to the proper § 548 benchmark. *See id.* at 537, 114 S.Ct. 1757. Indeed, the *BFP* court used "fair" interchangeably with "reasonably," suggesting that these terms contain the same ambiguity. *See Stone*, 72 F.3d at 470–71 (citing *BFP*, 511 U.S. at 540, 545, 114 S.Ct. 1757).

■ "Present" is more helpful. Traditionally, in bankruptcy law, "present value" means something other than the satisfaction of prepetition debt. *See, e.g., In re Major*, 218 B.R. 501, 505 (Bankr.W.D.Mo. 1998); *In re Briglevich*, 147 B.R. 1015, 1021 (Bankr.N.D.Ga.1992); *In re Purnell*, 92 B.R. 625, 630 (Bankr.E.D.Pa.1988); *In re Wilson*, 52 B.R. 637, 638 (Bankr. E.D.Tenn.1985). According to this understanding, if proceeds of a transaction are used to satisfy antecedent debt, these pro-

ceeds cannot be used to calculate "present value." *See id.*

In the foreclosure context, the use of "present" shows that the proper § 549(c) benchmark should not be the winning bid at a foreclosure sale. Sometimes, the proceeds from foreclosure sales are less than the amount needed to satisfy the mortgage, creating a "deficiency." *See generally,* 4 M. Wolf, *Powell on Real Property,* § 37.41 (2000). Thus, with a "deficiency," if the § 549(c) benchmark is simply the winning bid at a foreclosure sale, then no "fair equivalent value" is given for the property.

This result is absurd. It suggests that "fair equivalent value" can be satisfied when zero value has been given. Whatever § 549(c) requires, it must require something.

■ The other benchmark option—close-to-fair-market value—avoids this absurdity while garnering substantial support from two core principles of the Code. One core principle is that exceptions to the automatic stay are read narrowly. *See Far Out Prod., Inc. v. Oskar,* 247 F.3d 986, 995 (9th Cir.2001) (noting the existence of narrow equitable exceptions to the automatic stay); *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Assoc.,* 997 F.2d 581, 590 (9th Cir.1993) (noting that "exceptions to the automatic stay should be read narrowly"). A narrow reading gives debtors greater protection from creditors, thus "alleviat[ing] financial strains on debtor[s]." *In re Del Mission Ltd.,* 98 F.3d 1147, 1151 (9th Cir.1996). If giving no value can satisfy § 549(c), then this exception is no longer narrow.

■ A second core principle is treating creditors equally. *See In re Glasply Marine Indus.,* 971 F.2d 391, 394–95 (9th Cir.1992). Section 549 applies to postpetition transactions, meaning transactions occurring after the filing of the bankruptcy petition. The filing of the petition creates an important state of affairs. First, the debtor's property is collected and becomes property of the bankruptcy estate. *See Hillis,* 997 F.2d at 585. Second, creditors' claims are grouped and managed according to each creditor's relative priority. *See id.* at 585–86. In grouping creditors' claims, a key concern is equality of distribution. *See* H.R.Rep. 95–595, 95th Cong., 1st Sess. at p. 178, 1978 U.S.Code Cong & Ad.News at p. 5787 (1997) (a "prime bankruptcy policy [is] equality of distribution among creditors of the debtor ..."). However, if one creditor can satisfy § 549(c) by paying little or no value—a possible result when the § 549(c) benchmark is simply the winning bid at tax auction—then this creditor jumps the queue, taking property out of the estate that, otherwise, would remain for distribution to all creditors. *See In re Powers,* 88 B.R. 294, 297 (Bankr.D.Nev.1988) (noting that because postpetition transfers take property from bankruptcy estate, the transferee must pay something close to fair market value).

By contrast, the close-to-fair-market benchmark honors these core principles. First, with a higher benchmark, fewer transfers will fit into the § 549(c) exception. Second, this benchmark treats creditors equally. Whatever property is taken out of the estate, something of approximately equal value is put back in. Consequently, no one creditor gains a windfall at the expense of others.

■ Thus, "present fair equivalent value" tolerates little deviation from fair market value. *See In re Shaw,* 157 B.R. 151, 154 (9th Cir. BAP 1993) (citing *In re Powers,* 88 B.R. at 296–97); *In re Glendenning,* 243 B.R. 629, 636 (Bankr.E.D.Pa. 2000); *In re Auxano Inc.,* 96 B.R. 957, 963 (Bankr.W.D.Mo.1989). Here, Lusardi purchased the Sun Dunnes for 44% of fair market value ($269,500 divided by

$615,000). Forty-four percent of fair market value is too low to be "present fair equivalent value." *See In re Shaw*, 157 B.R. at 154 (holding that 47% of fair market value is not "present fair equivalent value"); *In re Powers*, 88 B.R. at 297 (holding that 73% of fair market value is not "present fair equivalent value").[3] Accordingly, Lusardi did not pay "present fair equivalent value."

## 2. Interference with State Interests

 Lusardi's tax deed is void for two reasons: one, Riverside County violated the automatic stay by selling the Sun Dunnes; two, Lusardi paid less than "present fair equivalent value." Usually, a tax foreclosure sale conducted according to state law (as in this case) cannot be undone because of price inadequacy, unless the sale price " 'shock[s] the conscience.' " *BFP*, 511 U.S. at 542–43, 114 S.Ct. 1757 (citations omitted). By voiding Lusardi's tax deed, an essential state interest is impinged, namely, the security of title to property acquired from foreclosure sales. *See id.* at 544, 114 S.Ct. 1757. Lusardi's tax deed would not be void if § 549(c)'s benchmark were not interpreted as close-to-fair-market value. Because this interpretation affects an area of traditional state regulation, it must comply with the principle of comity. *See id.* at 543–44, 114 S.Ct. 1757.

 Comity is a principle of judicial federalism. *See* Laurence H. Tribe, *American Constitutional Law*, § 3–28 (1988). It requires courts to respect state sovereignty by minimizing the conflict between state and federal law. *See id.* When an interpretation of federal law disrupts areas of traditional state regulation, the disruption is permitted if the federal law manifests such an intent, either by stating so or by clear implication. *See BFP*, 511 U.S. at 543–544, 546, 114 S.Ct. 1757. Absent clear intent, federal bankruptcy law should be interpreted to adopt, rather than displace, preexisting state law. *See id.* at 545, 114 S.Ct. 1757.

Relying on the principle of comity, the Supreme Court, in *BFP*, refused to interpret § 548's "reasonably equivalent value" to require a fair market benchmark. The Court reasoned in three steps. Initially, it concluded that "reasonably equivalent" was ambiguous about the proper benchmark. *See id.* at 537, 547, 114 S.Ct. 1757.

Second, the Court found that significant state interests are upset if § 548's benchmark is fair market value. *See id.* at 540, 544, 114 S.Ct. 1757. Specifically, according to *BFP*, a fair market benchmark presumes selling done without time pressure and subject to the normal give and take of negotiation. *See id.* at 538, 114 S.Ct. 1757. These presumptions are the "very antithesis" of foreclosure sales: prices are not fixed by mutual negotiation; there is nei-

---

**3.** Lusardi also claims that his purchase price of $269,500 is something close to fair market value. When sold, the Sun Dunnes had a tax debt of $474,000 and a first mortgage of $250,000. According to Lusardi's expert, because there was no equity in the property, no bidder would have paid anything close to $269,500. Thus, the $269,500 was significantly more than the Sun Dunnes' fair market value.

This argument fails as a matter of law for two reasons. First, with certain exceptions not applicable here, tax deeds come free and

clear of all encumbrances. *See* Cal.Rev. & Tax.Code § 3712. So, Lusardi's experts' math is faulty: it assumes encumbrances not at issue in a tax foreclosure sale.

Second, "equity" means something different than "fair market." "Equity" is the difference between fair market and debt in property. *See* Black's Law Dictionary, 484 (5th ed.1980). Thus, a purchase price exceeding the equity in the sold property is not the same as a payment exceeding the "fair market value" of property.

ther the time to find a suitable buyer nor mutual negotiation between them. *See id.* Consequently, "every piece of realty purchased at foreclosure would be under a federal cloud," because it would not be sold for fair market value, and so could be undone through § 548. *See id.* at 544, 114 S.Ct. 1757.

Third, the *BFP* court determined that interpreting "reasonably fair equivalent" to require a fair market benchmark did not comply with the principle of comity. *See id.* at 540, 543, 544–45, 114 S.Ct. 1757. "Reasonably fair equivalent" is an ambiguous term, *see id.* at 547, 114 S.Ct. 1757, manifesting no clear intent to disrupt an "essential" state interest, namely security of title. *See id.* at 544, 114 S.Ct. 1757. Therefore, the Court refused to interpret the benchmark as fair market.

Some courts have extended *BFP*'s analysis to § 549(c). For example, in *In re T.F. Stone,* the court was "unable … to perceive a meaningful difference between 'reasonably [equivalent value]' and 'present fair [equivalent value]' as applied in the context of [a] forced-sale case." 72 F.3d at 470. Because § 549(c)'s language contained the same amount of ambiguity as § 548, and the disruption to state foreclosure law was the same as in *BFP*, the *Stone* court extended BFP's holding to § 549(c). *See id.* at 471–72.

Lusardi contends that *Stone* controls the § 549(c) analysis in this case. In *Stone,* as here, the bankruptcy provision at issue is § 549(c). As in *Stone,* Lusardi argues, the disruption to state foreclosure law is the same. The terms from § 549(c) supporting the close-to-fair-market benchmark—"present fair equivalent value"—are ambiguous as in *Stone.* Because they are ambiguous, Lusardi concludes, "present fair equivalent value" cannot justify the disruption to state foreclosure law. Instead, as in *Stone* and *BFP,* Lusardi continues, the benchmark should be the winning bid at a properly conducted foreclosure sale because it complements settled state foreclosure law.

The Court disagrees with Lusardi's argument, instead finding *Stone* inapplicable. In *Stone,* the tax sale at issue resulted from tax deficiencies arising postpetition. *See* 72 F.3d at 470. Here, Washington Street's tax debt arose prepetition. Thus, unlike here, in *Stone* there was no conflict between § 362(a) and § 549(c) that would justify a narrower reading of § 549(c). *See In re D'Alfonso,* 211 B.R. 508, 518 (Bankr.E.D.Pa.1997). When § 362(a) and § 549(c) do conflict, courts interpret § 549(c) narrowly, finding that "present fair equivalent value" creates a tougher standard than § 548's "reasonably equivalent value." *See, e.g., Shaw,* 157 B.R. at 154; *In re Powers,* 88 B.R. at 296–97.

Furthermore, by extending *BFP,* the *Stone* court ignored *BFP*'s narrowly crafted holding:

> We emphasize that our opinion today covers only mortgage foreclosures of real estate. The considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different.

*BFP,* 511 U.S. at 537 n. 3, 114 S.Ct. 1757. Relying, in part, on this limiting language, the *In re D'Alfonso* court refused to follow *Stone. See* 211 B.R. at 518.

In the present case, two other "considerations" militate against extending BFP to § 549(c) cases. First, § 549(c) and § 548 contain different language. The § 549(c) benchmark is "present fair equivalent value," while the § 548 benchmark is "reasonably equivalent value." By using different terms, Congress is presumed to have acted purposefully and intentionally. *See BFP,* 511 U.S. at 537, 114 S.Ct. 1757. Reflecting this different language, this Court presumes that Congress created a § 549(c) benchmark different from § 548.

*See In re Samaniego,* 224 B.R. 154, 164 n. 5 (Bankr.E.D.Wash.1998) (refusing to follow *Stone* because "these two clearly different terms"—"present fair equivalent value" and "reasonably equivalent value"—create different standards); *Shaw,* 157 B.R. at 154 (§ 549(c) and § 548 use different benchmarks); *In re Powers,* 88 B.R. at 296–97 (same).

Second, the disruption of states' interests in § 549(c) is different than § 548. In § 548, the source of the disruption is § 548 itself. Section 548 authorizes the trustee to set aside prepetition transactions not for "reasonably equivalent value."

In contrast, § 549(c) is not the source of the disruption; § 362(a) is. Section 362(a)(4) enjoins creditors (including government units, *see* 11 U.S.C. §§ 101(15) and (27)) from enforcing liens. The automatic stay prohibits "all foreclosure actions." *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. at p. 340 (1978), 1978 U.S.Code Cong. & Ad.News at p. 5787. Section 362(a)'s void rule, enunciated in *Schwartz,* sets aside the results of state foreclosure sales. *See Schwartz,* 954 F.2d at 575 (voiding tax assessment for violation of automatic stay). As an exception to § 362(a), § 549(c) creates no more interference than that already created by § 362(a). Accordingly, interpreting § 549(c) to require a close-to-fair-market benchmark yields no additional disruption to areas of state regulation. By creating no additional interference, § 549(c) raises none of the comity concerns found in *BFP.*

**B. Revenue & Taxation Code § 3728**

Lusardi wants his $269,500 back. Under California Revenue and Taxation Code § 3728, before a tax deed is declared void, the former owner of the property, Washington Street, must pay the tax purchaser, Lusardi, the money spent to win the property at auction, $269,500, along with other costs and penalties "expended ... in pursuit of title." Cal.Rev. & Tax.Code § 3728.

In its January 1999 Order and at the April 23 hearing, the Court held that § 3728 applies to this case. During the April 23 hearing, the Court ordered the parties to submit a cost accounting to determine what Washington Street owed Lusardi under § 3728. Finding § 3728 applicable was wrong. Section 3728 does not apply to this case; it is preempted by federal bankruptcy law, because it interferes with how the Code handles prepetition debts.

**1. Applicability of California Revenue & Taxation Code § 3728**

 Under the Supremacy Clause, federal law is the supreme law of the land. U.S. Const., Art. VI, cl. 2. As a consequence, laws interfering with, or contrary to, federal law are preempted. *See Perez v. Campbell,* 402 U.S. 637, 652, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). The Supreme Court has recognized three kinds of preemption: (1) "express preemption," where federal law orders that the state law be displaced, *see Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992); (2) "field preemption," where federal law "so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it," *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (citation omitted); and, (3) "conflict preemption," when compliance with both federal and state regulations is physically impossible or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, *see Gade v. National Solid Wastes Management Association,* 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992) (citations omitted).

Express and field preemption are not at issue here. The Code has no explicit preemptive language applicable to state foreclosure law. Nor is the Code's regulation so pervasive as to crowd out state laws regulating property tax collection.

▮▮▮▮ When analyzing conflict preemption, the task—as in all preemption analysis—is to determine whether state regulation is consistent with the structure and purpose of the federal statute as a whole. *See Gade,* 505 U.S. at 98, 112 S.Ct. 2374. Making this determination requires a two-step analysis: first, construe the two statutes at issue; second, determine whether they conflict sufficiently to warrant preemption. *See Perez,* 402 U.S. at 644, 91 S.Ct. 1704. A sufficient conflict occurs when the state law has a direct and substantial impact on the federal scheme. *See Gade,* 505 U.S. at 107, 112 S.Ct. 2374 (citation omitted).

### a. California Revenue & Taxation Code § 3728

In California, before a tax deed is declared void, § 3728 requires a settling of the accounts.[4] Section 3728 requires courts to settle the accounts by a three-step process. *See* Cal.Rev. & Tax.Code § 3728. First, the court determines the amount of taxes owed before the sale. *Id.* Next, from this total, the court orders the former owner to pay the tax purchaser that portion of the taxes, penalties, and costs that the latter "expended ... in pur-

suit of title." *Id.* In effect, this means that when the purchase price is less than the taxes owed, the former owner must pay the tax purchaser the purchase price, because the taxing authority will have applied the proceeds of the tax sale to reduce the tax debt owed on the property. *See* Cal.Rev. & Tax.Code §§ 3717.5, 3718, 3719. Third, the court orders the former owner to pay the remaining taxes owed to the proper tax agencies. *See* Cal.Rev. & Tax.Code § 3728. The former owner must make both payments within six months of the deed being declared void. *See id.* Otherwise, the court will issue the tax purchaser a new tax deed. *See* Cal.Rev. & TaxCode § 3728.1.

### b. Violation of 11 U.S.C. § 362(a)

▮▮▮▮ Violations of § 362(a) are void, meaning they accomplish nothing. *See Schwartz,* 954 F.2d at 572–73. The purpose of the automatic stay is to protect debtors from creditors and preserve the status quo so that the debtors' property can be organized pursuant to bankruptcy law and process. *See Hillis,* 997 F.2d at 586.

▮▮▮ The void rule furthers this purpose in several ways. One, it ensures that debtors need not take any action to protect themselves from creditors' collection efforts. *See Schwartz,* 954 F.2d at 571. Two, it imposes on creditors (and in this case on Lusardi), rather than debtors, the burden of persuading a court that a trans-

---

4. Section 3728 provides, in relevant part:

Before holding any tax deed ... to be void, the court shall determine the correct amount of taxes, penalties, and costs that should be paid upon redemption to discharge the tax and assessment liens of all taxing agencies and revenue districts had the purported tax sale not been held and the court shall order the former owner ... to pay that amount within six months as follows:

(a) To the purchaser ... the amount of taxes, penalties and costs expended by him or

her as determined by the court in pursuit of title to the property, and when the purchaser at that sale ... in good faith and claiming the property under a tax deed, which is regular upon its face, and has made permanent improvements thereon, the court shall not make that decree until there has also been repaid to the purchaser ... a sum, as determined by the court, equal to the amount by which the value of the property has been enhanced by those permanent improvements;....

Cal.Rev. & Tax Code § 3728.

fer violating the automatic stay should not be voided. *See id.* at 572; *In re Soares,* 107 F.3d 969, 976 (1st Cir.1997). Three, it negates any transfers of debtor property, thus maximizing the size of the estate for distribution to creditors. *See Soares,* 107 F.3d at 975.

The effectiveness of the automatic stay is "central to the functioning of the bankruptcy system." *See Far Out Productions, Inc. v. Oskar,* 247 F.3d 986, 995 (9th Cir.2001). By preserving the estate, it allows creditors' claims to be ordered according to bankruptcy law. *See Hillis,* 997 F.2d at 586. To ensure its effectiveness, exceptions to the automatic stay are read narrowly. *See id.* at 590.

Preemption analysis requires an examination of how the state law at issue affects the structure of the federal scheme as a whole. *See Gade,* 505 U.S. at 98, 112 S.Ct. 2374. Thus, how § 3728 affects the Code's management of tax liens, as a whole, must be construed as well.

The Code intricately manages property tax liens. As a lien on real property, the tax debt is secured. In Chapter 11 cases, it passes through the bankruptcy process, remaining a claim on the debtor's property. *See* 11 U.S.C. § 506(d); H.R.Rept. No 95–595, 95th Cong., 1st Sess. 356, 357 (noting that 506(d) permits liens to pass through the bankruptcy case unaffected); *see also, In re DeMarah,* 62 F.3d 1248, 1251 (9th Cir.1995) (noting that property exempt from the bankruptcy estate nonetheless remains subject to a tax lien). When the amount of debt secured by the tax lien exceeds the value of the real property, Chapter 11 trustees can bifurcate the tax lien into secured and unsecured portions, relegating the unsecured portion to an eighth priority unsecured claim. *See In re Dever,* 164 B.R. 132, 145 (Bankr.C.D.Cal.1994) (permitting "lien stripping" of IRS lien in a Chapter 11 case). Upon confirmation of the Chapter

11 plan, the taxing authority receives payment of the tax debt according to the reorganization plan, even if the taxing authority is impaired by and does not agree to the plan. *See* 11 U.S.C. § 1141(a); *see generally,* 4 L. King, *Collier on Bankruptcy,* ¶ 506.03[7][d][I] (2001). If the Chapter 11 plan is converted into a Chapter 7 liquidation, then, under § 724(b), proceeds from the sale of the property securing the tax lien become a fund to pay priority and administrative claims before the tax lien. *See* 11 U.S.C. § 724(b); *see also, In re Sherrill,* 78 B.R. 804, '807 (Bankr.W.D.Tex. 1987). The subsequent discharge of the debtor's tax obligation is binding on state tax agencies "despite the [s]tate's election not to share in the recovery of the bankruptcy estates' assets." *In re Ellett,* 254 F.3d 1135, 1141 (9th Cir.2001).

### c. Conflict between § 3728 and the Code

The conflict between § 3728 and the Code arises in three ways. First, § 3728 conflicts with the meaning of the void rule in bankruptcy. Violations of the automatic stay are void for all purposes. Their ineffectiveness is permanent, not temporary. *See Anglemyer v. United States,* 115 B.R. 510 (D.Md.1990) (tax assessment violating the automatic stay was invalid for every purpose even after the stay expired); *Richard v. City of Chicago,* 80 B.R. 451, 454 (N.D.Ill.1987) (noting that dismissal of a case does not annul the effect of the stay voiding acts that violate it). The violations remain ineffective even if the underlying bankruptcy case is dismissed. *See In re Lampkin,* 116 B.R. 450, 453 (Bankr.D.Md.1990). When exceptions to the void rule are allowed, they are narrowly tailored. *See Hillis,* 997 F.2d at 590.

Section 3728, on the other hand, conditions the "voiding" of a tax deed on the debtor paying off, in full, property taxes owed to the state taxing authority. Essen-

tially, § 3728 creates another exception to the void rule for certain real property sold at a tax foreclosure sale. If its requirements are not met, then the tax purchaser receives a new tax deed on the property despite the tax deed being void. *See* Cal. Rev. & TaxCode § 3728.1.

 By creating another exception to the void rule, § 3728 conflicts with the Code's treatment of void transactions. Under the Code, void transactions are treated as if they never occurred. *See Ellis v. Consolidated Diesel Electric Corp.*, 894 F.2d 371, 373 (10th Cir.1990) (because results of judicial proceedings conducted in violation of the automatic stay were void, there was no final judgment upon which the appellate court could base its jurisdiction) (cited with approval in *In re Schwartz*, 954 F.2d at 572); *see also, In re Sanders*, 198 B.R. 326, 329 (Bankr.S.D.Cal. 1996) (finding preempted a California law permitting postpetition foreclosure sale to relate back to a time before it occurred to make it valid). In contrast, § 3728 permits the holder of a tax deed—void under the Code—to nonetheless retain title.

Second, § 3728 conflicts with bankruptcy policies supporting the void rule. The void rule enables debtors to rely on the automatic stay to protect their property. *See Schwartz*, 954 F.2d at 571. Yet, as an exception, § 3728 undermines this protection. It obliges debtors to take affirmative steps to defend their property from state foreclosure sales when, as here, the state proceeds with the tax sale despite knowing of the automatic stay. Once the debtor's property is sold, according to § 3728, the debtor can recover the property after reimbursing the tax purchaser and paying the taxing authority the remaining taxes. *See* Cal.Rev. & TaxCode § 3728. Otherwise, the property is lost to the tax sale purchaser. *See* Cal.Rev. & TaxCode § 3728.1. To avoid this result, debtors must keep the property from being sold;

merely notifying the taxing authority may be not be enough (as in this case). If § 3728 is not preempted, then debtors such as Washington Street must do what the *Schwartz* court said they shouldn't have to do: spend "a considerable amount of time and money policing and litigating creditor actions" when, as here, that creditor is a local tax agency. *Schwartz*, 954 F.2d at 571.

Third, § 3728 conflicts with the larger Code scheme for ordering creditors' claims. Under § 3728, the tax lien must be paid within six months. *See* Cal.Rev. & TaxCode § 3728. Otherwise, the tax purchaser gets the property free of all encumbrances. *See* Cal.Rev. & TaxCode § 3712. Other secured claims (such as, here, the holder of the $225,000 first mortgage on the Sun Dunnes) are extinguished. *See id.* By contrast, in Chapter 11 cases such as this one, all secured claims pass through bankruptcy and remain claims on the property. *See* 11 U.S.C. § 1129(b)(2); *see generally,* 4 L. King, *Collier on Bankruptcy,* ¶ 506.03[7][d][I] (2001). They must be paid in full. *See id.* Otherwise, the reorganization plan cannot be confirmed. *See id.* Also, in Chapter 7 cases, tax liens are paid after other expenses. *See* 11 U.S.C. § 724(b); under § 3728, tax liens are paid first, or the property cannot be recovered.

The conflict between § 3728 and the Code is significant. It creates another exception to the void rule, an exception at odds with the purposes of the automatic stay. By elevating the claims of tax purchasers, § 3728 upsets the equal treatment of all creditors. Also, by giving the tax purchaser title free and clear of other secured claims, § 3728 conflicts with how the Code treats other secured creditors. Accordingly, § 3728 is preempted.

## 2. Analysis of Costs under § 3728

Should an appellate court disagree that § 3728 is preempted, the Court determines

the money Washington Street owes Lusardi as follows:[5]

### a. Washington Street's Claim for Tax Reassessment

■■■ Section 3728 requires courts to determine the "correct" amount of taxes owed on the tax defaulted property. Here, when sold, the Sun Dunnes had a property tax bill of approximately $477,000. Washington Street claims that this assessment was wrong because Riverside County taxed it as a time-share, instead of as an apartment complex. As an apartment complex, according to Washington Street, the Sun Dunnes' "correct" tax bill was $113,000.

■■■ There is a presumption that property taxes have been properly assessed. *See Plaza Hollister Limited Partnership v. County of San Benito*, 72 Cal. App.4th 1, 84 Cal.Rptr.2d 715, 733–36 (1999). Before judicially challenging an assessment, the taxpayer must first exhaust all administrative remedies by appealing to the county equalization board. *See id.; see also, Sea World Inc. v. County of San Diego*, 27 Cal.App.4th 1390, 33 Cal. Rptr.2d 194, 200 (1994). After exhaustion, a court is permitted to examine the assessment method to determine if it is reasonable. *See May Dept. Stores Co. v. County of Los Angeles*, 196 Cal.App.3d 755, 771–72, 242 Cal.Rptr. 162 (1987). If there is a reduction, it is appropriate only for subsequent years; the taxpayer is not entitled to a refund for past years. *See Sea World*, 33 Cal.Rptr.2d at 200–01.

Given this standard, it is unclear whether the Court can entertain a challenge to the tax assessment in the first place. Nothing in Washington Street's papers shows that it exhausted its administrative remedies.

Assuming, *arguendo*, that it can entertain such a challenge, Washington Street's argument fails for lack of evidence. Washington Street relies on Riverside County's subsequent reduction in the tax rate assessed against the Sun Dunnes. Although Riverside County subsequently lowered the Sun Dunnes' tax rate after the foreclosure sale, this reduction could reflect Washington Street's different plans for the Sun Dunnes—as an apartment complex versus as a time–share—rather than Riverside County correcting an error. Yet a potentially new purpose cannot change the taxes that were owed when the property was being assessed as a time–share before the tax sale. Nor can a new assessment require a retroactive refund of taxes based on correction of assessment errors. *See Sea World*, 33 Cal.Rptr.2d at 201–02. Thus, Washington Street's motion for a "correct" reassessment is denied.

### b. Lusardi's Claim for Attorneys' Fees

■■■ Lusardi asks the Court to award him attorneys' fees because they were costs incurred "in pursuit of title" to the Sun Dunnes. Attorneys' fees are not included within the term "costs." Unless attorneys' fees are "specifically provided for by statute," they may be required only by agreement of the parties. *See* Cal. Code Civ. Procedure § 1021. When, as in § 3728, the term "costs" is used alone, "[i]t is too well established to require citation of authority that 'costs' do not include attorneys' fees." *Downer Corp. v. Union Paving Co.*, 172 Cal.App.2d 126, 129, 342 P.2d 64 (1959). Rather, each party must pay for its own legal fees. *See Trope v. Katz*, 11 Cal.4th 274, 278, 45 Cal.Rptr.2d 241, 902 P.2d 259 (1995). Accordingly, Lusardi's request is denied.

---

**5.** The Court realizes this determination is dicta. *However*, by these rulings, the Court hopes to avoid having the case remanded again. Or, if remanded, remanded with clear directions about how to proceed.

### c. Lusardi's Insurance Costs and Interest

 Lusardi seeks reimbursement for prejudgment interest of $210,951 and for property insurance expenditures of $6,358. Both requests are denied. Purchasers of tax-defaulted property from a public entity are limited to the remedies provided by the Revenue and Taxation Code. *See Van Petten v. County of San Diego*, 38 Cal.App.4th 43, 47, 50, 44 Cal. Rptr.2d 816 (1995). Unless provided by statute or contract, there is no right to prejudgment interest. *See Ball v. County of Los Angeles*, 82 Cal.App.3d 312, 147 Cal.Rptr. 252 (1978). Here, § 3728 makes no mention of prejudgment interest or insurance premiums. *Compare* Rev. & Tax-Code § 3728 *with* Rev. & TaxCode §§ 5151 (expressly providing for interest) *and* 5153 (same). Accordingly, Lusardi's request is denied.

### d. Lusardi's Purchase Price

 Lusardi paid Riverside County $ 269,500 for the Sun Dunnes. He also paid $269.45 in costs for conducting the sale. Lusardi may recover these two amounts only under § 3728.

## IV. Conclusion

This case has been around a long time ... too long! The tortured factual and procedural history began on February 20, 1990. For the next eleven years, the parties fought an unrelenting battle over two primary issues: one, whether the automatic stay voids Lusardi's purchase of the Sun Dunnes; and, two, whether the Code gives Lusardi a form of equitable relief as a good faith purchaser without notice of the automatic stay.

Like the proverbial slow boat to China, the case has meandered back and forth and up and down through the state and federal courts. New issues, like mussels on a slow moving vessel, were added, mutations and variations of the issues were raised, argued and decided and sometimes redecided. Reams of paper were filed. Legions of lawyers, judges, law clerks and clerical workers spent countless hours trying to end a seemingly endless voyage. Endless hearings have been held. Opinions and orders have been written. Repeated appeals have been made. And for all of this time, effort and money, what do we have? The battle goes on. The costs go on and the parties don't even seem to be winded.

The case cries for an end, for a final determination of the rights and duties of the parties. The case is another Jarndyce and Jarndyce, droning on, a "scarecrow of a suit [that] in the course of time, has become so complicated that no man alive knows what it means." Charles Dickens, *Bleak House* 4 (Oxford University Press 1970) (1853). It is hoped, and the hope may be overly optimistic, that this opinion, and the opinion certain to follow from the inevitable appeal, will prevent the return of this case once again, like Banquo's ghost, to haunt the district court. As they say in New York, "enough already."

For the reasons stated above, the Court finds, as a matter of law, that Lusardi's purchase of the Sun Dunnes falls outside of § 549(c)'s exception to the automatic stay because Lusardi did not pay "present fair equivalent value." Also, the Court denies Lusardi's motion for reimbursement because § 3728 is preempted by federal bankruptcy law. If the preemption analysis is wrong, then Lusardi may recover his purchase price ($269,500) plus costs paid for conducting the sale ($269.45).

IT IS SO ORDERED: